## Whallon *against* Scott.

A voluntary assignment is bad, when it conveys only the possession of the effects assigned. and not the property, for twenty-five days, and provides that, if, within that time, the assignor shall satisfy certain creditors named, then the effects are to be returned to the assignor; if not, then they are to be sold for the use of the creditors.

So, if it empowers the assignee to retail the goods during that time, without making any appropriation of the proceeds:

So, if it contains a clause of indemnity to one who should, thereafter, enter bail for stay of execution, in certain judgments obtained against the assignor.

THIS was an action of trespass *vi et armis,* brought in the court of common pleas of Erie county, by James A. Whallon against Andrew Scott, sheriff of said county, and William Truesdail, Josiah Pardee, and Robert Allison, his assistants, for forcibly entering the store of the plaintiff, in the town of Erie, and carrying away certain goods, viz. boots, shoes, packing cases, sign of the plaintiff, &c., of the value of 1000 dollars.

The defendants pleaded not guilty, with leave, &c., and special plea.

The plaintiff proved that the defendants, in the latter end of March 1839, broke open the store of the plaintiff, and seized and carried away the goods mentioned in the declaration, then in the possession of the plaintiff, and that the store and goods had been in the possession of one A. R. Denny, previous to the time of the plaintiff's taking possession.

The plaintiff then offered in evidence the following deed of assignment from A. R. Denny to plaintiff, dated 5th March 1839, with supplements annexed, dated 6th, 7th and 8th March 1839.

Memorandum of agreement made and concluded this 5th day of March 1839, between A. R. Denny and James H. Whallon, both of the borough of Erie, and county of Erie, and commonwealth of Pennsylvania. The said A. R. Denny, for the consideration hereinafter mentioned, hath agreed to bargain and sell, assign and transfer unto the said James H. Whallon, all the boots, shoes, and cloths belonging to him, and now in the store lately occupied by William A. Brown & Co., in Erie, in trust for the payment of the following creditors, viz: James S. Clark, Mrs M. B. Champlin, John T. Wilson, Jackson & Graham, George A. Elliot, Josiah W. Deane, J. H. Whallon, George L. Wood, Oliver Spafford, Ira W. Hart, with the understanding always, that the said James H. Whallon shall take immediate possession of the same, and shall keep possession of the same, for the space of twenty-five days from this date; and if the said A. R. Denny shall, by or before that day, have

X.—V

[Whallon v. Scott.]

paid up or satisfied the creditors within named, then, and in that case, the whole articles, by these presents, assigned to the said James H. Whallon, shall be returned to the possession of the said A. R. Denny.   But in case the said debts shall not at that day, have been paid or settled, then, and in that case, the said James H. Whallon shall proceed to sell the same at public or private sale, as he shall deem best adapted to the interests of said Denny, and the within named creditors.   If he shall sell at public sale, to give at least three weeks notice of said sale, in at least one paper in the borough of Erie; and shall apply the proceeds of sale of said goods in payment of said within named creditors, and shall return the overplus of said sale to the said A. R. Denny; and in case said goods shall not sell for a sufficient amount to pay the said within named creditors in full, then the said George A. Elliot shall first be paid 75 dollars, due him for rent up to the 1st of April 1839, and the residue of the creditors to be paid *pro rata* of the funds remaining.   And the said James H. Whallon is hereby further authorized to put in a clerk into said store, or to go into said store himself, and sell the said goods at retail, from this date, during the said twenty-five days, provided it shall not be done at any expense to the said Denny; and the said James H. Whallon is further authorized, in the meantime, to deliver to any of the within named creditors, to the amount of their respective debts, at the cost of the same, any of the goods hereby assigned.   And in case the said Denny does not pay the said debts, and the said goods have to be sold, then the said Whallon to receive out of the proceeds of said goods, for his trouble, 1 dollar 25 cents per day, for every day he shall be necessarily engaged therein.

Witness our hands and seals, this 5th of March 1839.

A. R. DENNY,        [L. s.]
JAMES H. WHALLON, [L. s.]

Signed, sealed and delivered in presence of T. W. Randall, and M. Whallon.

And it is further agreed between the parties to the above presents, that in case the said James H. Whallon enters special bail for the stay of execution in certain judgments before E. D. Gunnison, Esq., in favour of James T. Clark, John T. Wilson, and Ira W. Hart, creditors mentioned in the above assignment, and in case the said A. R. Denny does not appear at the expiration of the time of the stay of said executions, so that the said James H. Whallon becomes liable for the whole amount of said judgments, as special bail in said cases, then, and in that case, the said James H. Whallon is to appropriate the proceeds of the sale of the said goods, and the goods hereafter mentioned, sufficient amount to pay the whole amount of said judgments, whether the goods shall sell for sufficient to pay the whole creditors within mentioned or not; and in addition to the foregoing property, the following is also assigned

for the consideration abovementioned, viz. all the accounts now on the books of the said Denny, all fixtures belonging to the store, including signs, and furniture.

Witness our hands and seals, this 6th day of March 1839.

A. R. DENNY,   [L. S.]
JAMES H. WHALLON, [L. S.]

Signed, sealed and delivered in presence of L. W. Randall.

And it is further agreed, as a further supplement to this instrument, entered into this 7th March 1839, that after the within named creditors shall have been paid their respective debts, then the overplus, if any, shall be applied to the payment of a certain note of 125 dollars, held against the said A. R. Denny by Augustus E. Hall, another note of 100 dollars, held by the said Hall against the said Denny, and endorsed by J. W. Deane, being already included in the claim of the said J. W. Deane, for which provision is made through the endorser J. W. Deane.

Witness our hands and seals, the day and year above written.

A. R. DENNY,   [L. S.]
JAMES H. WHALLON, [L. S.]

In presence of L. W. Randall, H. L. Harvey.

Acknowledged before A. W. Brewster, as is certified.

And it is further agreed between the parties to the above, that in case the said James H. Whallon enters special bail for the stay of execution in certain judgments before E. D. Gunnison, Esq., in favour of Joshua R. Breed, M'Fayden & Downs, and Sterrett & Shaner, and in case the said A. R. Denny does not appear at the expiration of the time of the stay of said executions, so that the said James H. Whallon becomes liable for the whole amount of said judgment, as special bail in said cases, then, and in that case, the said James H. Whallon is to appropriate from the proceeds of the sale of said goods heretofore mentioned, sufficient amount to pay said judgments, with all costs in all judgments before mentioned, whether the said goods abovementioned shall sell for sufficient to pay the whole creditors or not. And the said Whallon is further authorized to pay as above, a certain debt due to L. W. Randall, and M. Whallon, for writing assignments, &c.; and further, that the said Whallon shall have the privilege of paying any of the abovementioned creditors, the amount of their claims in goods out of the stock before mentioned. The clause entered in the above assignment, whereby Augustus E. Hall was admitted as a creditor in said assignment, is hereby rendered null and void, so far as it relates to said Hall, and L. and A. Wade are hereby admitted into the said assignment, and shall stand in the same situation in which the said Hall would have stood, and the said Denny shall keep the said Whallon always indemnified in the above premises.

Witness our hands and seals, this 8th day of March 1839.

JAMES H. WHALLON, [L. S.]
A. R. DENNY,   [L. S.]

Acknowledged before A. W. Brewster, as is certified.

The plaintiff also gave in evidence the docket of E. D. Gunnison, Esq., showing that on the 6th and 8th March 1839, the plaintiff became special bail for stay of execution in the following judgments against A. R. Denny, viz: J. R. Breed 10 dollars 47 cents, M'Fayden & Downs 13 dollars 22 cents, John T. Wilson 45 dollars and 89 cents, James S. Clark 20 dollars, J. W. Hart 70 dollars 10 cents, and also proved a debt of 60 dollars due from Denny to plaintiff.

The defendants gave in evidence the record of a judgment in Allegheny county, for 2000 dollars, conditioned for the payment of 1000 dollars, in favour of L. & A. Wade, against the said A. R. Denny, entered 20th March 1839; also a *testatum fieri facias* to the sheriff of Erie county, issued thereon, entered of record in Erie county, 25th March 1839, with levy on the goods in said assignment mentioned, by virtue of said writ, by Andrew Scott, sheriff of Erie county, (one of the defendants,) on the 26th of March 1839, as the property of A. R. Denny.

The property was subsequently sold, by the sheriff, on a *testatum venditioni exponas.*

The plaintiff requested the court to charge on the following points:

" 1. That if the jury believe, that the assignment was in other respects *bona fide*, the mere reserving a future right to pay the debts in twenty-five days, and take the goods, is not reserving such a benefit to the assignor, Denny, as renders the instrument fraudulent in law.

" 2. That reserving to the assignor, Denny, the surplus after payment of creditors named in the assignment, is not fraudulent in law; especially as there is no evidence of the existence of any creditors not named in the assignment.

" 3. Whether or not the assignment gives to the plaintiff an exclusive title to the property taken, yet if the jury believe, that A. R. Denny, the assignor, was indebted to the plaintiff, J. H. Whallon, and that the plaintiff became liable at the instance and request of the said Denny, and that the goods taken by the defendant were pledged by the said Denny, and taken possession of by the plaintiff as a security for his said debt and liabilities, the plaintiff had a legal right to the possession of said property until fully paid his said debt and liabilities so secured.

" 4. That the act of assembly having required the inventory of the assignee to be under oath, his inventory with his affidavit attached, is evidence *prima facie*, that it contains all the goods assigned."

The court below charged as follows:—

" The plaintiff in this case claims to recover from the defendants, the sheriff and assistants on the ground that he is an assignee under the laws of the commonwealth regulating voluntary assignments for the benefit of creditors.   He exhibits in evidence a deed of as-

[Whallon v. Scott.]

signment, executed by Alexander R. Denny to himself, for a quantity of boots and shoes in the store-house occupied by him in this borough, together with his books of account, &c. This deed is dated the 5th day of March 1839, and to which are added three supplements, respectively dated the 6th, 7th and 8th of the same month. The deed prefers certain creditors therein named, being ten in number. The first supplement dated the 6th of March somewhat changes this assignment, and it stipulates, that if the said assignee will enter himself as special bail in the case of three preferred creditors who had obtained judgments, to wit, James S. Clark, John T. Wilson and Ira W. Hart; then, and in that case if the said A. R. Denny did not appear at the expiration of the stay of execution, so that the said J. H. Whallon became liable for the whole amount as bail, then he is to retain out of the proceeds of the property assigned the whole amount of such judgments, without regard to whether the property will pay the balance of the creditors named or not; thus far assigning his property, not to pay creditors, but as an indemnity to his special bail, to become absolute only on condition of his not being surrendered in discharge of his bail. In this assignment or supplement, he assigns his store books and signs. The second supplement provides for the payment of a note to A. E. Hall for 125 dollars in case of overplus. In the third supplement, Mr Hall is excluded, and it appears he had got his debt by an arrangement, which he has explained here as a witness. This third and last supplement again prefers the assignee, on condition of his entering special bail in certain other judgments, one in favour of Joshua R. Breed, one in case of M'Fayden & Downs, and one in the name of Sterrett & Shaner; and if the assignor did not appear at the expiration of the stay of execution, and the assignee became liable, then he was preferred, and was to retain out of the proceeds of the goods and property assigned, the full amount of all the judgments and costs, without regard to the other creditors named, and these last judgments are placed on the same footing as those in the first supplement. He, in this supplement, prefers his attorneys and T. and A. Wade, the creditors on whose execution the goods were seized. A bond was given and approved of by a judge of the common pleas, on the 22d of March—appraisers appointed, and inventory made same day and filed on the 23d.

"A *testatum fieri facias* issued from Allegheny county, in favour of T. and A. Wade, against A. R. Denny, for 1000 dollars, interest from the 20th of March, and costs, and was levied on the goods in question, on the 26th of March, and the property was subsequently sold on a *testatum venditioni exponas*. To test this assignment, and this levy and sale, is our present business. By an act of the legislature of the commonwealth, passed the 14th of June, 1836, it is alleged this assignment is authorized. By that act any person, 'that shall make a voluntary assignment of his estate real or personal, or of any part thereof, to any other person or persons, in

X.—V*

trust for his creditors, or some of them, it shall be the duty of his assignee or assignees, within thirty days after the execution thereof, to file in the office of the prothonotary of the court of common pleas of the county in which the assignor shall reside, an inventory or schedule of the estate or effects so assigned, accompanied with an affidavit by such assignees, that the same is a full and complete inventory,' &c.

"This act of assembly, as well as the whole policy of our laws, requires, that an individual wishing to avail himself of the advantage of preferring creditors, and appointing his own assignees to administer his estate, should thereby comply with the requirements of the law. By the statute 13 *Elizabeth*, and in force in Pennsylvania, any thing done to delay, hinder, or defraud creditors, is made void. The acts regulating voluntary assignments by force of legislative sovereignty, certainly in this state restrain this statute in favour of voluntary assignors beneficially, I admit, when honestly acted under, but would be pernicious if not strictly guarded and watched. No subject within the scope of jurisprudence, has so much and earnestly engaged the attention of jurists, as the transmission of personal property, when done in failing circumstances. It is our duty to see that it be fairly, honestly and legally done. Is then the assignment in this case, a good and valid one, and such as will avail the plaintiff here? I am obliged to lay down the law to you, that in the opinion of this court it is not. By express stipulation the assignee is only to retain possession for the assignor for twenty-five days, at the expiration of which time, by agreement with the creditors named, he could repossess himself of the goods; if he did not do this, "then and in that case, the said James H. Whallon shall proceed to sell," &c. There is an implied power of revocation, or certainly its equivalent. The assignment did not take effect for the purposes of assignment for twenty-five days. This is to be computed from the date of the consummation of the deed of assignment, which was perfected on the 8th of March; and this too, is in accordance with the views of plaintiffs' counsel, and is so argued by them. The property was levied on, the 26th day of March, seven days short of the period, at which time, on the happening of a certain contingency, the property was to revest. The law required the assignment to be absolute and unconditional, for the purposes mentioned. It not being so here, and the time at which it was to become an absolute assignment, if it could be a valid one, not being arrived when the sheriff levied, his levy is not affected by the alleged assignment. In the twenty-five days the plaintiff was to sell such part of the property as he could retail. For the benefit of whom? Not creditors. The time at which it was to become an assignment then, was twenty-five days ahead. The property then to be assigned was such as remained after selling for that period of time. This kind of assignment on the face of it is defective, and the plaintiff can derive no advantage from it in this case.

[Whallon v. Scott.]

" I said the assignment must be absolute and unconditional for the purposes contemplated by the act, to wit, the benefit of creditors; and I cannot think that assignments *under this law,* to indemnify special bail, who may or may not become liable, are good and valid. If he does not become liable, but the principal surrenders or is surrendered, the property does not pass; and if the law would tolerate the preference to special bail, under these circumstances, it would tie up the property without appropriating it, and would thus positively become the instrument to delay, hinder, and defraud creditors. This the law does not do. Bail in indemnities of this kind are not the kind of creditors contemplated by the act. A man cannot be said to be a creditor, unless there is something due him, or certainly to become due. This is, in the opinion of the court, a secure and good ground on which to say, that this assignment is defective, and confers no title on the plaintiff, that can avail him in this case.

" As to the plaintiffs' points:

" 1. This point is answered in the general charge in the negative.

" 2. To this point I assent.

" 3. This is a proceeding under an act of assembly, which act must be pursued, and the plaintiff cannot vary his position now, and recover the property as pledged for indemnity; and if it were, the question now trying as to a pledge for security, then there is not such a delivery as would authorize a recovery; and indeed such an arrangement would, in this case, have been a fraud in law.

" 4. To this point I assent."

The following errors were assigned:—

1. The court erred in taking the decision of the facts from the jury, and in charging that the plaintiff was not entitled to recover.

2. In not answering plaintiff's first point in the affirmative. And in charging that the assignment was invalid.

3. In not answering the defendant's third point in the affirmative. And in charging that there was not such a delivery of the goods as would authorize a recovery.

*Babbitt* and *Williamson,* for the plaintiff in error.
*Walker,* for defendant in error.

The opinion of the court was delivered by

SERGEANT, J.—If there are evils attending our system of voluntary assignments and preferences to creditors, by debtors in failing circumstances, they are such as our courts of justice may lament, but have not the power to remedy. It is competent only to the legislature to alter the law as established; and by them, it would seem, it has not been considered expedient to take away the right of the debtor in this respect, which existed at common law. They have preferred making enactments, from time to time, for the purpose of

[Whallon v. Scott.]

regulating and enforcing this right. So that it now prevails as a mixed system, its foundations laid in the common law, but modified and regulated by legislative provisions.

Courts can, however, and ought to keep this right within its proper bounds, and to prevent, as far as possible, the introduction of new fangled devices and contrivances, which may run into licentiousness and abuse. Such is the temptation to persons whose embarrassed circumstances force them into an assignment of their property, still to retain a control over it, in some shape or other, that there is no end to the concoction of schemes for this purpose. Every provision, therefore, in a voluntary assignment ought to be narrowly scanned and closely watched, to see that the authority given to the debtor by law is not exceeded. On the one hand, the debtor is, by our law, permitted to grant preferences to favoured creditors, and to stipulate for releases; but on the other hand, he must part with the property and the possession, free from any reservation for his own benefit, or that of his family, and from any control over, or interference with it, and from any contingency on which he may or may not resume it, at his will and pleasure. To allow him to transfer the property, retaining the possession, or to part with the possession, retaining the property, is inconsistent with the nature of such a transaction, and calculated to introduce great abuses.

Several clauses in this assignment are properly treated by the court below as objectionable. In the first place, by the plain language of the instrument, the assignor parts only with the possession of the effects assigned, and not with the property, for twenty-five days. During that time it is impossible to say who is the owner. The assignor holds the creditors at bay, whilst he is, perhaps, trafficking among them, to compromise their debts, for a present satisfaction or security, and their legal power to proceed against the property is arrested. If the assignor may thus fix the property in a neutral position for twenty-five days, he may do it longer, and this, no doubt, would be soon attempted, if the present experiment should succeed. The debtor thus, under the name and guise of an assignment, might entrench his effects against legal process, till some remote period, when it would suit him to set aside the assignment altogether, and resume the possession. Besides, as is justly remarked in the opinion of the court below, the assignees were empowered, during this interval, to sell the goods by retail, without any appropriation being made of the proceeds.

The clause, also, in relation to indemnifying the special bail, is a new feature in assignments, and equally objectionable. He is not a creditor to the amount of these judgments, and it is impossible to say that he will ever become so, as he may never enter bail, and if he should, the assignor might surrender or be surrendered by his bail in discharge of the recognizances.

The power of the assignor to surrender or not, as he pleased

would enable him to exercise his own will and pleasure over these preferred creditors, by placing their debts in what scale he chose. This is a control which it would be dangerous to permit, and inconsistent with the entire *cessio bonorum* for the use of creditors, which the law sanctions.

As to the suggestion that the property might still be claimed as a pledge, independent of the assignment, it is sufficient to say, that being intended to pass under the instruments executed, it can be held only under them.

Judgment affirmed.