MONCURJ5, P.
Whatever may be the law and course of judicial decision in other States on the subject, there can now be no doubt but that in this State, a debtor in failing circumstances may make a valid assignment of his whole estate (subject, however, to existing liens thereon), for the benefit of his creditors, in such order of priority as he may choose to prescribe in the assignment; and though his estate be insufficient for the payment of all his debts, he may lawfully subject it, in the first place, to the payment in full of such of his debts as he may choose to prefer, and then to the payment pro rata of the claims of such of his other creditors as may, in a limited period, (which should be reasonable,) accept the terms of the assignment, and release him from all further or other liability on account of said claims. And such an assignment may be valid, even though it do not direct any surplus which may remain after satisfying the claims of the accepting and releasing creditors to be applied to the payment of his other debts, or ' any of them; or even though *it direct any such surplus to be paid to the debtor himself.
That such is the settled doctrine in this State, is abundantly shown by the cases of Skipwith’s ex’or v. Cunningham, &c., 8 Leigh 271; Kevan & als. v. Branch, 1 Gratt. 274; and Phippen v. Durham & als., 8 Id. 457. Whether the doctrine be sound in its origin or not, it ought to govern our courts until otherwise provided by the legislature. As was said by Allen, P., in an opinion concurred in by all the other judges, in Dance & als. v. Seaman & als., 11 Gratt. 780: “It would disturb many titles if the principles heretofore established and sanctioned by the practice of the country were now to be questioned. , If inconvenience results from the construction heretofore given to the statute against fraudulent conveyances, the remedy should be administered by the law-making power. An act of the legislature would operate prospectively, and men could regulate their transactions so as to conform to its provisions. But a decision of the court giving a new and different rule of construction, would have a retroactive, and, therefore, an unjust operation.”
Of course, if there be any intention on the part of the debtor, in executing the assignment, to delay, hinder or defraud creditors, &c., it is void as to such creditors, by the express declaration of the statute ; saving only the title of a purchaser for valuable consideration, and without notice of the fraud. Ho appearance of fairness on the face of the assignment can ,give effect to it in such a case. Rraud may be proved by the deed itself, or by evidence aliunde. When proved by the deed itself, it is called constructive, or legal fraud, and cannot be disproved by evidence aliunde. Mere badges of fraud, which sometimes appear on the face of the deed, and sometimes from evidence aliunde, unlike constructive or legal fraud, may always be repelled by other evidence.
*In this case it certainly does not appear that there was any actual intention to delay, hinder or defraud creditors. If actual fraud be charged ip the bill, it is positively denied in the answer, and there is no evidence in the record tending to prove it, but the contrary. Indeed, the bill seems to state a case only of constructive or legal fraud.
Then the question we have to consider is, Whether the deed of trust in this case is void according to the doctrine settled by our decisions before referred to?
In order to maintain the validity of such a deed, or, at least, that part of it which provides for the payment of debts on the terms of the execution of a release by the creditors, it is necessary that all, or substantially all, the debtor’s estate should be conveyed by the deed. Skipwith’s ex’or v. Cunningham, &c.; Phippen v. Durham & als.; ubi supra. The debtor is permitted by such arrangement to protect his future earnings from the pursuit of such of his creditors as may enter into it, but not a portion of his present property. “He may protect his person, indeed, by a fair composition, and a surrender of all his property, but he cannot protect a part of that property by giving up another part. Such an attempt is fraudulent and void.” 8 Leigh 292; Quarles & als. v. Kerr & als., 14 Gratt. 48. But it is not necessary for the deed to show on its face that all the estate of the debtor is conveyed. That fact may be proved by evidence aliunde. In neither of the cases of Kevan & als. v. Branch & als., and Phippen v. Durham & als., did it appear on the face of the deed that all of the property of the debtor was conveyed. , In Phippen v. Durham & als. all of the debtor’s property was not in fact conveyed, yet so nearly all as to bring the case within the operation of the rule. The amount omitted was too small to show that it was omitted for the purpose of securing any benefit to the debtor. The omission *must have been from inadvertence. What invalidates a deed in such cases is, an intention to delay, hinder or defraud creditors, &c. ; and unless there be such an omission of property in the deed as shows such an intention, it is not material. Any omission of property for the purpose of securing a substantial benefit to the debtor (except such property as may be exempt by law from distress or levy), conclusively shows such an intention.. In the *660 ■case we have in hand, it plainly appears on the face of the deed that all of the partnership property of the grantors was conveyed, but not that all of their individual property was conveyed. In order to bring the case within, the operation of the rule before referred to, it was necessary for the deed to convey all of the individual property of the grantors, as well as all of their social property. Ror though the debts provided for were only partnership debts, yet they bound the partners personally, and the release stipulated for by the terms of the deed was a release not only of the firm of Rogers, Riddick & Co., and Rogers, Adams & Co., but of the members thereof individually. It sufficiently appears on the face of the deed, that the two tracts of land in Texas thereby conveyed, were the individ-' ual property of W.r H. Rogers; but it does not appear on the face of the deed that he had no other property, nor that his companions had no individual property. The evidence in the record shows that W. H. Rogers had no other individual property than the land in Texas, and that his co-partners in the said firms had no individual property at all of any value. The deed, therefore, strictly complies with the rule which requires that all the property of the grantors should be conveyed in such a case.
•But it is objected, that the deed not only requires that the grantors should be released, but also that Samuel R. Adams, who is.,not a ■ grantor, should be released. If’the property of the firm of Rogers, Adams & Co. was properly ^conveyed for the purposes of the deed' — a question which will be hereafter considered — it seems to follow that he ought to be released from the debts of that firm, as well as the other partners.
Again it is objected, that the deed is incomplete in this, that it refers to and makes schedule A a part thereof, whereas it was not attached or appended thereto before the execution of the deed. There was no necessity for such a schedule to give effect to the deed — the property thereby conveyed being sufficiently described therein for that purpose. Skipwith’s ex’or v. Cunningham, &c.; Kevan & als. v. Branch; Phippen v. Durham & als., supra; Lewis & als. v. Caperton’s ex’or & als., 8 Graft. 148; Brashear v. West, 7 Peters R. 608, 614; Burrill on Assignments, 276-278, and cases cited. The deed does not refer to schedule A as being actually annexed thereto, but only states that an inventory of the stock will, as soon as practicable, be taken and marked schedule A, and annexed to the deed, “which schedule, when so annexed, is to be taken as a part of this deed. ’ ’ It was inconvenient to make out the schedule in time to be annexed to the deed before its execution, but it was made out immediately thereafter, and filed with the answer of Rogers, Riddick & Co. "in this case within about a month after the execution of the deed, and nearly a month before the expiration of the period of sixty days named in the deed.
Again, it is objected to the deed, that it ‘ ‘undertakes to release the trustee from all liability except for money actually received by him; thus releasing him from all responsibility in the selection of his agents, or for the supervision of their actions; enabling him to be guilty of gross and wilful negligence, to appoint incompetent and corrupt assistants without any responsibility ; . and attempting to compel the creditors to sanction this unlimited grant *of power over the effects, under penalty of being excluded from any enjoyment of The fund.” And it is said that, under the deed, the trustee has the power to employ, “and actually does employ, one of the grantors to manage and control the business, to sell the assets and collect the moneys due; his employee admitting himself by the deed to be insolvent and irresponsible. These clauses in the deed they claim to be inconsistent with, and tending to defeat, the objects of the deed, and as such render the deed fraudulent and void.”
The deed does authorize the trust “to employ such agents, &c., as he may deem necessaty, and to pay them a reasonable compensation for their services out of the trust fund;” and does provide, “that the said trustee shall not be liable for any moneys, other than such as shall actually come to his hands in the execution of the trust; and that said trustee shall not be held responsible for the default or omission of any of the agents whom he may employ to aid him in the execution of the trust.”
There is nothing very unusual in these provisions, which are inserted out of abundant caution, at the instance and for the protection of the trustee; and they do not very materially, if at all, vary the legal liability of the trustee. Burrill on Assignments, 227. The employment of agents by a trustee is often necessary to enable him to execute the trust, and such necessity existed in this case. He is bound to select fit agents, and to hold them to a strict and prompt responsibility for their acts; and having discharged this obligation, he is not liable for any loss arising from their acts or defaults, even though there be no clause of exemption from such liability in the deed. Such a clause of exemption as is contained in the deed in this case does not discharge him from his obligation aforesaid. While he is not responsible “for any moneys other than such as shall actually come to his hands in the execution of his *trust,” he is responsible for his negligence in not appointing fit agents, and in not holding them to a proper account.
But, after all, such a clause could only be material as a badge of fraud, and as tending to prove that there was an understanding between the debtor and trustee, that the debtor should continue to use and enjoy his property, notwithstanding the deed. If such was the fact, the deed would of course be fraudulent. But if such was not the fact, if the clause was only inserted out of *661 abundant caution on account of the trustee, it could have no effect on the validity of the deed. If the creditors were not satisfied with it, or with such an exemption as it might be supposed to afford to the trustee, they might have another trustee appointed in his place. In this case it clearly appears in the record that the clause was not inserted in the deed for any undue or unlawful purpose, and that no evil whatever has resulted from it. The trustee has a right to employ agentsi when necessary, even without an express power in the deed for that purpose, and being bound to employ the most suitable persons as such, may employ the debtor himself when he is the most suitable person for the purpose. In Marks & als. v. Hill & als., 15 Gratt. 400, it was expressly stipulated in the deed that one of the grantors should be the agent of the trustee to make sale of the goods, which agency might be terminated at any time by either one of the preferred or any three of the deferred creditors, and yet the deed was held to be valid. See also Burrill on Assignments, 185, 472, and cases cited in the notes. In this case, the debtors were employed as agents by the trustee, and the record clearly shows that the3r were the most suitable persons for the purpose, and that benefit, and not injury, resulted to the trust fund from their employment.
Again it is objected, that the deed, being made to a ^creditor in trust to secure his own demands, is a mortgage, to which the right of redemption is incident, and the creditor trustee cannot sell by the mere authority of the deed, and without resorting to a court of equity.
This is an objection which does not strike at the validity of the deed, but only at the power of the trustee to act as such. The trustee, being the agent of both parties, debtor and creditor, ought to be an impartial person; and generally the creditor is supposed not to be such a person, and will not be permitted to act as trustee, especially in regard to real estate, though the deed provide for his doing so. Chowning v. Cox & als., 1 Rand. 306. It seems not to have been jet decided by this court that this principle extends to personal estate. 1 homax’s Dig. last ed. 423. Moore’s ex’or v. Aylett’s ex’or, &c., 1 Hen. & Mun. 29. Though the reasons assigned by the court in Chowning v. Cox apply as strongly to personal as to real estate. 1 Tuck. Com. book 2, p. 104. But the debtor may sanction and confirm a sale, even of real estate, made by his creditor as trustee, and will be considered as having done so by being present at the sale, and making no objection. Taylor’s adm’rs, &c. v. Chowning, 3 Leigh 654. And it is not perceived why, if the debtor has no objection, the co-creditors of the trustee should have any. Generally the interest of all the creditors is the same, so far as relates to the execution of the trust, and would be safe in the hands of any of them as trustee. In this case the trustee had a comparatively small claim, which was included in the first or preferred class of debts secured by the deed, and there seems to be no good ground of objection to his acting as trustee. There can be no doubt about the sufficiency of the trust fund to pay the preferred debts. The sale of the goods has already been made, with the sanction and concurrence of the grantors in the deed, and the proceeds are more than enough to pay the preferred debts. *So that whatever just ground of objection, if any, might once have existed to the action of Cannon as trustee, it can now no longer exist.
Again it is objected, that the deed requires the creditors to release without information as to the assets or liabilities.
When creditors are put to their election, whether they will accept the provision made for them by the debtor in an assignment of his property, and give him a release, or be excluded from the benefit of the assignment, it is reasonable that the deed should give to the creditors all the information in the power of the debtor, as to the nature and value of the property conveyed, and the amount of the debts intended to be provided for, and a reasonable time to obtain such information as the deed may not afford, and to make up their minds deliberately and understandingly whether they will accept or reject the offer made to them. If this be not, when it can conveniently be, done, the omission might at least be a badge of fraud, though it might not in itself amount to legal or constructive fraud. In this case, it seems that all the information was given by the deed which could, under the circumstances, conveniently be given in regard to the subject conveyed and debts provided for; and the necessary means were immediately taken and diligently pursued by the trustee and grantors to give the speediest and fullest information in their power to the creditors, who might easily have obtained, within the period limited by the deed, all the information necessary to enable them to make their election properly. The period limited by the deed, sixty days from the date of its recordation, seems to have been reasonable under the circumstances, and as long as was given in some other cases in which the deed has been sustained. In Skipwith’s ex’or v. Cunningham, &c., four months after the date of the deed was the period limited. *In Kevan & als. v. Branch, three months was the period. In Phippen v. Durham & als., the period was but thirty days from the date of the deed. In neither of these cases was there any schedule annexed to the deed; nor, in the first, were the creditors, except those of the first class, named in the deed. There seems, therefore, to be no good ground of objection to the deed in this case on account of any defect of information which it gives as to the assets or liabilities.
The next and last objection is, ‘ ‘that by the terms of the deed the partnership assets of Rogers, Riddick & Co. go pro rata to pay the debts of Rogers, Adams & Co., without any estimate of the debt or assets of *662 either;” so that the plaintiffs, “creditors of Rogers, Riddick & Co. were, therefore, either compelled, by signing the deed, to consent to the misappropriation of the social assets of the debtors to the paj'ment of the debts of Rogers, Adams & Co., or by refusing to sign, to cut themselves off from all benefit of the assets of the debtors. ’ ’
The counsel for the appellees “admit that it was a defect in the deed to dispose indiscriminately of the assets of these two concerns,” but they say that “it is a mistake to suppose that such a defect invalidates the deed. Ror precisely this mistake was corrected in the case of McCullough & als. v. Sommerville, 8 Leigh 415; and the deed was so reformed as to apply properly the several kinds of assets.” On the other hand, the counsel for the appellants insist, that that case differed essentially from this; that'“in that case, there was no requisition for release; the creditors were not required to sign the deed under penalty of entire exclusion from the assets of their debtor.” “The creditors of Rogers, Riddick & Co. were cut off, by the very terms of the deed, from obtaining such an equitable reformation of the deed as obtained in McCullough & als. v. Sommerville. They were required to release their debtors, ^'Rogers, Riddick & Co., and at the ■ same time to consent (by their acceptance of the deed) that the assets of Rogers, Riddick & Co. should go, pro rata, to the payment of the debts of Rogers, Adams & Co., and that, too, without even knowing what the debts of Rogers, Adams & Co. were.”
There can be no doubt but that it was competent for the grantors in this deed to convey the said effects of Rogers, Adams & Co., notwithstanding Adams, one of the firm, did not join in the deed, in trust to secure the payment of the debts of the,firm, or any of them, either pro rata, or in such order of priority as they thought fit to prescribe. McCullough & als. v. Sommerville, 8 Leigh 415; Anderson v. Tompkins, 1 Brock. R. 456; Harrison v. Sterry, 5 Cranch’s R. 389; Burrill on Assignments, pp. 43-64, and the cases cited.
Nor can there be any doubt but that it was competent for the grantors in ■ this deed to convey the social effects of Rogers, Adams & Co. in trust for the payment pro rata of the.debts due by said firm, to such of its creditors as should, within the period limited, sign the deed, and thereby accept such ratable dividend in satisfaction of said debts, and agree to release the said firm and the members thereof, from all liability on account of the said debts respectively. If partners convey all their social and individual property for the payment of their debts, there is the same reason for authorizing them to prefer such of their creditors as will give them a release, as there is for authorizing an individual, who conveys all his estate for the payment of his debts, to give such a preference. It cannot be necessary to cite authority to sustain so plain a proposition. The case of Pearpoint v. Graham, 4 Wash. C. C. 232, stated in Bur-rill on Assignments, p. 47, assumes the proposition without question, and is decided upon such assumption. There was a question in that case whether *the assignment was valid, being executed by one only of the partners; but the learned judge thought it had been ratified by the other partners, and so became the act of the firm; and on that ground it was sustained.
Nor can there be any doubt but that it was competent for the grantors in this deed to convey by one and the same deed, instead of by different deeds, the individual estate of W. H. Rogers ’ and the social effects of Rogers, Riddick & Co. and of Rogers, Adams & Co., in trust for the payment of a debt of W. H. Rogers and debts of the said two firms respectively. If authority be required for so plain a proposition, it may be .found in the case of McCullough & als. v. Sommerville, 8 Leigh 415; so that if in this case the net proceeds of the effects of Rogers, Riddick & Co. had been devoted in the first place to the payment of debts of that firm, and the net proceeds of the effects of Rogers, Adams & Co. had been devoted in the first place to the payment of debts of that firm, the arrangement would have been legal and valid, notwithstanding the condition of release on which the payments might be directed to be made.
Nor can there be any doubt but that if there had been no release clause in this deed, it would have been legal and valid, notwithstanding it directs the proceeds of the individual property of W. H. Rogers, and the social effects of Rogers, Riddick & Co. and Rogers, Adams & Co. to be applied indiscriminately to the payment of a debt of W. H. Rogers and debts of said firms. McCullough & als. v. Sommerville, 8 Leigh 415, is an express authority for that proposition, according to which case, the court of chancery in such a case will reform the deed, according to the probable intent of the grantors and the justice of the case, and apply the individual fund in the first place to the payment of the individual debt, and the partnership funds in the first place to the payment of the partnership debts ^respectively, observing the order and preference established by the deed. The coui-t held in that case, that though the deed neither mentioned the partnership, nor distinguished the social effects and social creditors from the individual property and individual creditors of the grant- or, but purported on its face to convey his individual property, for the payment of individual creditors named in the deed, in two classes, according to a certain order and preference therein established, yet it was not fraudulent, either in fact or in law. “Was this deed fraudulent?” enquired Judge Carr in that case. ‘ ‘There is no evidence in the record to establish the fact; nothing to show an intention to withdraw the effects of the firm from the creditors, or by any covin or collusion to disappoint their claims. On the contrary, the whole property, of *663 every kind and description, not only of the firm, but of the individual partner McCullough, is conveyed; thus stripping himself and the firm (so far as the grantor could), of every atom of property, and subjecting it to the payment of the creditors named. And when the bill is filed, to take this fund from the trustees and put it under the guardianship of the court, to he administered by the court, he promptly answers, assenting to the measure, and praying that the court would forthwith order a sale of the whole subject; stipulating only that the proceeds shall be applied to the favored creditors. This surely evinces that there was no fraud in fact, either perpetrated or intended. But it is said that there is fraud in law — fraud in the attempt by one partner to convey all the property of the firm, and to devote this property to the payment of specified creditors, without giving his co-partner any voice in the matter; and moreover, in jumbling together the separate and social funds, and directing the separate and social creditors to be indiscriminately paid according to the list. Ret us look at these objections in their order.” *And after disposing of the 1st, he proceeds thus in regard to the 2d: “And though the deed does not devote the social fund exclusively to the social creditors, and the separate fund to the separate creditors, does it comport with the mild and beneficent spirit of equity, for this cause (the result, doubtless, of ignorance and mistake), to annul the deed? Is it not better to reform it, by throwing each class of creditors upon its own fund, and thus reach the real justice of the case, and probable intention of the grantor? This is a power of frequent exercise in equity ; one instance of which is in reforming joint bonds and making them operate as joint and several; upon the reasonable presumption that either through fraud, ignorance or inadvertence, the meaning of the parties has not been carried into effect. ’ ’
Now the only remaining question — and the question on which this cause depends— is, Does the release clause, as it is called, make any difference? There was certainly, In this case, no fraud in fact, “either perpetrated or intended. ’ ’ There was certainly none in law, in the conveyance being made by two only of the three members of the firm of Rogers, Adams & Co., nor “in jumbling together the separate and social funds, and directing the separate and social creditors to be indiscriminately paid,” or, rather, to be paid without expressly discriminating between these classes of creditors ; for the deed does not direct them to be paid “indiscriminately.” Is there any in law, in requiring the deferred creditors to give a release, as the condition on which they are to be allowed to participate in the benefit of the deed? Why should there be? Why may not a court of chancery reform the deed in this case as well as in the case of McCullough & als. v. Sommerville, according to the probable intent of the grantors and the justice of the case, and apply the individual fund in the first place to the payment of the individual debt, and *the partnership funds in the first place to the payment of the partnership debts respectively? The counsel for the appellants argue that that case differs essentially from this, in the fact that “in that case there was no requisition for a release; the creditors were not required to sign the deed rrnder penalty of entire exclusion from the assets of their debtor.” “The court, in deciding upon the deed (in that case), found no difficulty in separating the social from the individual assets, and the social from the individual debts. But no such question,” as the counsel further argue, “can arise or be adjudicated here.” “The creditors of Rogers, Riddick & Co. were cut off, by the very terms of the deed, from obtaining such an equitable reformation of the deed as obtained in McCullough & als. v. Sommerville. They were required to release their debtors, Rogers, Riddick & Co., and at the same time to consent (by their acceptance of the deed), that the assets of Rogers, Riddick & Co. should go pro rata to the payment of the debts of Rogers, Adams & Co., and that, too, without even knowing what the debts of Rogers, Adams & Co. were.” Now this is a plausible argument; but is it not a petitio prin-cipii? When the grantors made the deed in the terms in which it is written, the case of McCullough & als. v. Sommerville fixed its construction, and required it to be read as if it had been written so as to apply the individual fund in the first place to the payment of the individual debt, and the partnership funds in the first place to the payment of the partnership debts respectively. Suppose it had, in fact, been so written — can there be a doubt but that the deed would have been valid? But the legal construction of the deed as actually written is the same. Why, then, should there be any more doubt in this case than there was in that, but that the deed is valid? What reason can there be for saying that the intention of the grantors is different where there is a requisition for a release, from what it is *'where no such requisition exists — that the intention is literal in the one case, and not in the other? The deed in McCullough & ais. v. Sommerville could not legally take effect if construed literally, and therefore it was construed according to the probable intent of the grantor and the justice of the case. The deed in this case cannot legally take effect if construed literally, and for the same reason it ought to be construed according to the probable intent of the grantors and the justice of the case. If it was proper in McCullough & als. v. Sommerville to act upon the rule of construction which was established in that case, a for-tiori, it is proper to follow it in this case, after the lapse of more than thirty years since that decision was made. -It is a fair and reasonable, and not a forced or strained rule of construction. The deed conveys the assets of two firms in trust to secure the *664 payment of the debts of both, without expressing any discrimination. Why may it not be construed distributively — redendo singula singulis — soas to require the assets of each firm to be applied, in the first place, to the payment of the debts of that firm? Such a construction would seem to be consistent with the terms of the deed, and is necessary to make it valid and effectual. It ought, therefore, to be adopted — ut res magis valeat quam pereat. In McCullough & als. v. Sommerville there was no bill filed to have the deed reformed on the ground of mistake. The deed was treated in the pleadings as devoting the social and individual effects indiscriminately, according to its apparent literal import, to the payment of the social and individual debts. But to have so construed it would have been to make it void, and therefore it was construed distributively, according to the probable intent of the grantor and the justice of the case. To be sure, the court in that case speak of reforming the deed, but that seems to be an inapt expression, and what was done was rather to construe *than reform the deed. The court has no more right to change the contract of the parties in a deed which contains no condition of release than in one which does, and has no such right in either case. But if the court did intend to reform the deed in that case, to “reach the real justice of the case and probable intention of the grantor,” by analogy to the instance referred to by Judge Carr of “reforming joint bonds, and making them operate as joint and several,” then the same principle applies to this case, notwithstanding the condition of release contained in the deed.
Before I close this opinion, I beg leave to remark, that I came into court with strong predilections against that course of our own decisions which has tended to maintain the validity of such a deed as that which is now in question — I mean a deed containing what is called “the release clause, ” or a condition for a personal release of the debtor upon a conveyance of his estate for the payment of his debts. I was strongly inclined to concur in the views expressed on this subject by Chancellor Kent and Justice Story, besides other distinguished jurists. Perhaps my previous practice had tended to lead-me into this line of thought and preference. In the case of Phippen v. Durham & als., which came up for decision shortly after I came into the court, I took occasion to express this original inclination of my mind; but I felt myself bound to bow to the authority of the case of Skipwith’s ex’or v. Cunningham, &c., and I therefore concurred in the decision which was made in Phippen v. Durham & als. The longer I have remained in the court, the more convinced I have become of the value of the rule of stare decisis. And I regard the rule as especially valuable in its application to cases arising under the statute of fraudulent conveyances. No man can read Burrill on Assignments, in which all or nearly all the cases on this subject are collected, ^without being struck,, if not confounded, by the great conflict among them. Not only does this conflict exist between the decisions of one State and those of another, but often the decisions of the same State are conflicting in themselves. Courts, after going in one direction, have veered about and gone in another until the legislature has had to interpose and solve the difficulty. Now it seems to me to be wise for us to follow the course of our previous decisions, and leave it to the Legislature, if that course be wrong, to make a change. The propriety of doing so is clearly shown by the remarks of Judge Allen, in Dance & als. v. Seaman & als., 11 Gratt. 780, which I have already quoted.
I will further remark, that I feel in full force the argument founded on the supposed hardship of excluding the plaintiffs and other non-accepting creditors from any participation in the benefits of the deed in this case, when there was so much apparent doubt and difficulty as to the construction and effect of the deed, and the consequence of accepting its terms. But the supposed hardship arises, not from the peculiar terms and effect of the deed in this case, but from the law, which authorizes a debtor in failing circumstances to give preferences in the distribution of his. estate among his creditors, and to require a personal release as a condition of receiving the benefits of any such preferences. Such a debtor, not having estate enough to 'pay all his debts, may, of his own mere will and caprice, convey his estate for the payment of' a portion of them, leaving the rest wholly unprovided for; and the creditors thus excluded would have no legal right to complain. A fortiori, it would seem, creditors to whom an election is given to participate in the benefits of the deed, but who decline to accept its terms, have no such right to complain. No doubt which may exist as to the construction of the deed, nor any difficulty which may arise in ^making an election, can affect the case, if the meaning of the deed can be ascertained, and it was not intended to delay, hinder and defraud creditors. The circumstances which create the doubt or difficulty may tend to prove, and even be in themselves sufficient to prove, such an intention, and make the deed void; but if no such intention existed, the deed is valid. It is not enough, therefore, for the appellants to show that it was doubtful, or at least not certain, when the deed in this case was executed, whether the principle decided in McCullough & als. v. Sommerville would apply to it. Parties are presumed to know the law. And though the presumption is often not founded in fact, it is yet necessary, and well established in law. The deed being valid, and its construction settled by the decision just referred to, the accepting creditors are entitled to the benefit thereof accordingly, to the exclusion of the non-accepting creditors.
The foregoing views bring me to the conclusion' that there is no error in the *665 order dissolving the injunction which was awarded in this case, and that it ought to be affirmed; which is the only question presented for the decision of this court on this appeal.