# W. HEELING.

## HARDEN *et al. v.* WAGNER *et als.*

Submitted June 7, 1883—Decided November 3, 1883.

1. A motion to dissolve an injunction made pursuant to previous notice, should not be continued for the parties to take testimony, unless the plaintiff shows that he has testimony to sustain the injunction which he was unable to get before the motion was made; and even then it should not be continued, unless there appears to be great necessity for so doing. (p. 361.)

2. A receiver should not be appointed to take charge of property conveyed to a trustee to secure debts, in a suit in which the bill is filed to set aside the conveyance as fraudulent, when the motion is heard upon the pleadings and proofs, and it does not appear therefrom that the conveyance is fraudulent. (p. 362.)

3. A trust-deed to secure a note payable *one day* after date which conveys personal property and, also, *choses in action*, is not fraudulent because it provides that the trustee should sell the property conveyed *on demand* by the *cestuis que trust* or either of them. (p. 362.)

4. The statute against fraudulent conveyances—chapter 74, section 1 of Code—like all other statutes against fraud, is to be liberally expounded for the suppression of the fraud. (p. 365.)

5. If such conveyance be actually fraudulent and the *intent concurred in by grantee* as well as the grantor, it will be void as to creditors, however valuable may have been the consideration paid by, or secured to, the grantee or beneficiary. (p. 365.)

6. A conveyance not fraudulent in its inception cannot become so by matters subsequent; for the statute requires that the *act should be done* with a criminal intent; still, if it be afterwards employed for a fraudulent purpose, a court of equity will interpose to prevent such use of it. (p. 365.)

7. Until there is a legal lien by judgment or execution fixed upon the debtor's property, he may, though insolvent or in failing circumstances, convey or transfer his estate in trust; and if it be done in good faith, he may thereby prefer one creditor to another without committing fraud, within the statute, upon the creditors who are delayed or hindered by such conveyance. Nor is it an objection that the conveyance defeats all other creditors of their legal remedies, though they be a majority in number and value. (p. 365.)

8. A provision in the conveyance of a stock of goods or other chattels, that the trustee may continue the business, if intended merely as a means of realizing the trust-fund and with a view of winding up the business, is not fraudulent *per se.* Nor is a provision in such conveyance, that a grantor shall attend to the business, he being under the control of the trustee who may at any time, on demand of the *cestuis que trust,* sell the property, fraudulent *per se.* (p. 366.)

9. The *onus probandi* is on him who alleges fraud, and if the fraud is not strictly and clearly proved as it is alleged, relief cannot be granted, although the party against whom relief is sought may not have been perfectly clear in his dealings. (p. 366.)

10. But the proposition that "fraud must be proved and not presumed" is to be understood only as affirming that a contract honest and lawful on its face must be treated as such, until it is shown to be otherwise by evidence either positive or circumstantial. (p. 366.)

11. A party, who sells to the grantor in a deed, conveying horses to secure a debt, while the grantor is in charge of the horses as the agent of the trustee, grain and feed for their support on the credit of the trust-property, and the trustee has notice of such sale but refuses to give a written order for the feed, is entitled to be paid for said grain and feed out of the trust-fund, the deed being valid and said feed necessary for the support of said horses. Such debt is a part of the expenses of the trust and entitled to be paid as such. (p. 370.)

12. When a trust-deed of personal property is set aside by the circuit

court and a sale of the property made and confirmed by it, without objection to the sale in that court.   HELD :

That such sale can not be set aside, although on appeal the Appellate Court reverses the order directing the sale and holds that such trust-deed was erroneously set aside. (p. 371.)

SNYDER, JUDGE, furnishes the following statement of the case :

C. E. Wagner, a resident of the city of Wheeling, Ohio county, and in business there as the keeper of a livery stable on leased premises, by deed, duly acknowledged, dated June 16, 1881, and recorded in said county June 18, 1881, conveyed to Guy R. C. Allen, trustee, all his livery stock, consisting of horses, buggies, hacks, wagons, harness, &c., together with his unexpired lease of the stable, and also his household and kitchen furniture, in trust to secure the payment of eleven thousand five hundred dollars due from him to Thornton Pickenpaugh and William Wagner, of Morgantown, by bond of same date and payable one day thereafter. The deed mentions and describes specifically the articles of property conveyed, and it also transfers to the trustee "all the accounts, claims and demands due and belonging to the grantor arising or accruing to him from his business, or in anywise due him," and provides that, "upon demand of the said Thornton Pickenpaugh and William Wagner, or either of them, the grantee shall proceed to sell the foregoing *property* at public or private sale, and at retail or wholesale and for cash or upon reasonable credit, as may best promote the interest of the grantor and said Pickenpaugh and William Wagner, and also collect the accounts, claims and demands due to said grantor and apply the same according to law."

On July 13, 1881, said C. E. Wagner and Allen, trustee, executed a writing under seal, which was, on the day of its date, duly acknowledged and admitted to record, in which, after stating that some doubts may hereafter arise as to the authority of the trustee to collect the accounts and claims conveyed by said deed, declares that the true meaning and intent of said deed was to confer upon the trustee, Allen, "power and authority to collect all claims and accounts arising out of, or connected with, the livery business of C.

E. Wagner which were due at the time of its execution, or which might thereafter, in the conduct of the business, become due and apply the same to the payment of the debts secured in said deed," and it then provides, that if a true construction of said deed does not confer such authority upon the trustee, he is by said writing now empowered to take possession of, collect and apply said claims and accounts to the payment of the trust-debt.

At the time of making said trust-deed C. E. Wagner was indebted to A. S. Harden, Hook, Schrader & Co. and Donaldson & Co. by notes or accounts. And after the recordation of said deed said parties instituted their several actions and recovered judgments for their respective debts against said Wagner, and on December 24, 1881, and January 13, 1882, executions were issued on said judgments and abstracts thereof recorded as liens in the clerk's office of the county court of Ohio county.

On January 14, 1882, the said judgment and execution creditors, suing on behalf of themselves and all other creditors of C. E. Wagner, brought this suit in the circuit court of said county to have said trust-deed and writing declared fraudulent and set aside as to them, and to subject the property in said deed mentioned to the payment of their debts; or, if the said deed and writing should not be set aside *in toto*, then to have an account taken of the indebtedness secured thereby, which is *bona fide* due, and the proceeds of the property distributed as the rights of the parties may require. The bill prays for an injunction to restrain the said C. E. Wagner and Allen, trustee, from selling or disposing of said property or collecting said claims, and for the appointment of a receiver to take possession of the same and collect said claims, and for general relief. The bill was sworn to, and on the same day an injunction was granted. The grantor, trustee, and beneficiaries in the deed were made defendants and, on January 21, 1882, they filed their several answers, and pursuant to notice, previously given, moved for a dissolution of the injunction. The plaintiffs at the same time moved for the appointment of a receiver. The court continued both motions to enable the parties to take testimony. On March 1, 1882, the parties appeared before the judge in vacation

and said motions being fully heard upon the bill, answers, replications, exhibits and depositions, the motion to dissolve the injunction was overruled, and the motion of the plaintiffs sustained and a receiver appointed to take possession of the property and carry on the livery business therewith, and collect all claims and accounts, pay the proper expenses of conducting the business out of same, and make and file with the clerk of the court an inventory of the property taken possession of by him. He was also required to give bond as such receiver and report his proceedings to court. The receiver gave bond, took possession of the property and claims, carried on the business and made a report to court.

The cause was again heard, on May 3, 1882, the report of the receiver confirmed, and the court being of opinion that the trust-deed of June 16, 1881, was made with intent to delay, hinder and defraud the creditors of C. E. Wagner, set the same aside as to the plaintiffs and other creditors. The cause was then referred to a commissioner to take and report an account of the liens on the property in the hands of the receiver and all other debts against C. E. Wagner. The receiver was directed to sell the property at public auction, after giving notice as required, partly for cash and partly on credits of three and six months, and report to court. And thereupon James Crangle, by leave of the court filed his petition and was made a defendant to the cause.

Crangle claims in his petition that, after the execution of the trust-deed, C. E. Wagner, while in charge of the livery business as agent of the trustee, purchased from him as such agent for the horses conveyed by said deed, grain and feed to the amount of six hundred and seventy-nine dollars and twenty-six cents which remains unpaid and prays that said amount may be paid to him as a preferred claim out of the proceeds of the trust property.

The commissioner made and filed his report of liens and debts, in which he allowed Crangle's debt as a preferred claim. To this allowance the said Pickenpaugh and William Wagner excepted. The receiver and also the said Allen, trustee, filed their respective reports to neither of which was there any exception.

The cause was finally heard, on October 7, 1882, and a decree was then entered overruling the exception to the commissioner's report and confirming the same and also confirming the reports of the receiver and trustee. The general receiver of the court into whose hands the fund seems to have passed, was directed to distribute the said fund by paying, first, the costs of suit, rents for the leased premises and the compensation for services allowed the receiver and trustee, and then the liens and debts reported by the commissioner in the order reported by him, thereby postponing the debt mentioned in the trust-deed to the payment of the debts of the plaintiffs, but allowing the full amount of said debt as an unsecured debt.

On the petition of the defendants Thornton Pickenpaugh and William Wagner, a judge of this Court, on February 13, 1883, granted them an appeal from the aforesaid orders and decrees of January 21, March 1, May 3, and October 7, 1882, and a *supersedeas* to part of said decree of October 7, 1882.

*G. R. C. Allen* and *W. P. Hubbard* for appellants.

*Henry M. Russell* and *Erskine & Allison* for appellees.

SNYDER, JUDGE:

The appellants insist that the order of January 21, 1882, continuing their motion to dissolve the injunction was erroneous. This was error. The answers filed by the defendants on that day fully, plainly, distinctly and positively denied the allegations of the bill, and there was no proof offered, other than the affidavit to the bill, to support the material allegations on which the injunction was founded. Under such circumstances it has been repeatedly held by this Court that the motion to dissolve should not have been continued unless from some very great necessity; because the court is always open to grant and, of course, to re-instate an injunction whenever it shall appear proper to do so; also because the plaintiff should always be ready to prove his bill— *Pithole P. Co.* v. *Rittenhouse,* 12 W. Va. 313; *Horn* v. *Perry,* 11 *Id.* 694; *Hayzlett* v. *McMillan, Id.* 464.

The motion to dissolve in this case was made after notice

and an opportunity had been given to the plaintiffs to show by affidavits or otherwise the truth of the allegations of their bill, or at least the necessity for a continuance to procure such testimony, and that they knew or had good reason to believe they could obtain proof of the material averments of their bill. But this they wholly failed to do or excuse themselves for not doing, therefore under the decisions cited the motion to dissolve should have been sustained, and it was error not to do so.

It is next insisted that the vacation order of March 1, 1882, overruling the defendants' motion to dissolve the injunction and sustaining the plaintiffs' motion and appointing a receiver, was also erroneous. When this order was entered all the proofs, now appearing in the cause in support of the bill and answers, had been then taken and filed and the cause was heard upon said proofs and the answers of the defendants; consequently, the propriety of said order can not be sustained, unless the subsequent decree of May 3, 1882, setting aside the trust-deed was justified by the pleadings and proofs in the cause. If it was error to enter said decree *a fortiori*, it was error to make said order. This brings us to the main question in the cause: Did the court err in said decree of May 3, 1882? The solution of this enquiry depends upon the further enquiry: Was the said trust-deed of June 16, 1881, made with intent to delay, hinder and defraud the creditors of C. E. Wagner, and, therefore, void as to the plaintiffs and other creditors?

In support of said decree the appellees, the plaintiffs below, claim, *first*, that said trust-deed taken alone, or in connection with the writing of July 13, 1881, is fraudulent on its face, and, *second*, that it is fraudulent in fact.

1. Is said deed fraudulent on its face? The only part of the deed attacked in this connection, is that which requires a demand by the *cestuis que trust* before the trustee can sell the property or, as is claimed, collect the claims and accounts mentioned in it. It is insisted that, as the note secured was payable *one day after date*, the provision that a sale should be made only *on demand* of the beneficiaries shows an intent to shield the property rather than secure a debt. This view is more critical than it is sound. This provision as to the

*property* conveyed is simply a statement of what the statute would have required of the trustee had it been omitted from the deed. "The trustee   *   *   shall   *   *   *whenever required by any creditor secured,*   *   *   after the debt   *   * shall have become payable   *   *   sell the property conveyed." Ch. 72 § 6 Code, p. 743.   And as to the *claims and demands* transferred to the trustee by the deed, it would be a very narrow, if not an unreasonable, inference from the context that the trustee was to *sell* them *on demand* by the beneficiaries, and not collect them as is usually done in such cases. In the conclusion of the same sentence which provides for the sale of the property, the deed directs the trustee to "*collect* the accounts, claims and demands due to said grantor and apply the same according to law." In drawing the deed, it is more reasonable to conclude that these claims and accounts were inadvertently classed with the chattels than to infer that it was intended they should remain uncollected until a sale should be demanded and then sold as chattels. *Cochran* v. *Paris*, 11 Gratt. 348.   But, however this may be, it is certain that it was not intended the grantor should collect them, because they were by the deed, *eo instante*, transferred to the trustee and he alone thereafter could collect and give quittances upon their payment.   And, moreover, any obscurity, which may have existed in the terms of the deed, was entirely removed by the writing of July 13, 1881, which expressly made it the duty of the trustee to collect and apply them to the payment of the trust-debt.   But it is said that this writing makes it the duty of the trustee to collect not only the claims and accounts contracted before the execution of the deed, but also those "which might thereafter, *in the conduct of the business*, became due," and, consequently, it is thereby shown that it was intended "not only that the grantor shall remain in possession and control of the property but that he shall prosecute the business."   This it seems to me is a clear *non sequitur*. The deed conveyed all the property to the trustee without any reservation of control or interest in favor of the grantor.   Under the terms of the deed he had no more right to the possession or use of the property than any stranger who never saw it.   The possession and use as well as the title was transferred to and completely vested in

the trustee. It, therefore, necessarily follows that, if it was contemplated that the business should be thereafter conducted, it must have been intended that it should be done by, or under the supervision of, the trustee, the only person who had the right or authority to do it. And such was really the intention as shown not only by the said writing but by the proof in the cause. And that it was provided the business should be carried on under the supervision of the trustee, by agents employed by him, until the property could be disposed of in an advantageous manner is rather an evidence of good faith than of a fraudulent intent or purpose. *Gordon* v. *Cannon*, 18 Gratt. 387; *Sipe* v. *Earman*, 26 *Id.* 563; *Marks* v. *Hill*, 15 Gratt. 400.

The cases of *Garden* v. *Bodwing*, 9 W. Va. 121, and *Gardner* v. *Johnston*, *Id.* 412, relied on by the appellees, belong to that class of conveyances which reserve benefits to the grantor, or introduce limitations and contingencies, giving such uses to him and control over the property or its proceeds as are inconsistent with the security for the debt or object of the trust, being equivalent to a power of revocation, and are, therefore, adequate to the defeat of the security. *Lang* v. *Lee*, 3 Rand. 410; *Sheppards* v. *Turpin*, 3 Gratt. 373; *Spence* v. *Bagwell*, 6 *Id.* 444; *Addington* v. *Etheridge*, 12 *Id.* 436; *Perry* v. *Bank*, 27 *Id.* 756; *Kuhn* v. *Mack*, 4 W. Va. 194. The provisions of the deeds which were declared fraudulent and void in those cases are essentially different from any found in the deed or contract in the case at bar, and they have therefore no application here.

2. To sustain the position that the trust-deed is fraudulent in fact, the appellees rely upon several grounds which they claim are established by the evidence. Before adverting specially to these grounds and the character of the evidence relied on to support them, it is deemed proper to refer to some of the authorities and define the law applicable to the questions to be considered.

The section of our statute on which this suit is based and which declares every conveyance or transfer of real or personal estate, made with intent to delay, hinder and defraud creditors or purchasers, void as to such creditors and purchasers, contains this important qualification: "This sec-

tion shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." Ch. 74, § 1 Code p. 473.

This statute and those of 13 and 27 Eliz., from which it was taken, have been the subjects of many decisions by the appellate courts of Virginia and this State. According to these decisions the following principles of law have been established :

I. This statute, like all other statutes against fraud, is to be liberally expounded for the suppression of the fraud. *Hunters* v. *Waite*, 3 Gratt. 34, 58.

II. A creditor secured by a trust-deed, or rather the trustee therein, is held to be a purchaser for valuable consideration. *Wickham* v. *Lewis Martin & Co.*, 13 Gratt. 427 ; *Evans* v. *Greenhow*, 15 *Id*. 153 ; *Western M. & M. Co.* v. *Peytona C. C. Co.*, 8 W. Va. 409, 441.

III. If the conveyance be *actually* fraudulent and the *intent concurred in by the grantee* as well as the grantor, it will be void as to the creditors of grantor, however valuable may have been the consideration paid by, or secured to, the grantee or beneficiary. *Briscoe* v. *Clarke*, 1 Rand. 213 ; *Garland* v. *Rives*, 4 *Id*. 282 ; *Goshorn* v. *Snodgrass*, 17 W. Va. 717.

IV. A conveyance not fraudulent in its inception can not become so by matters subsequent; for the statute requires that the *act* should be done with a criminal intent; still if it be afterwards employed for a fraudulent purpose, a court of equity will interpose to prevent such use of it. *Claytor* v. *Anthony*, 6 Rand. 285, 306 ; *Lewis* v. *Caperton*, 8 Gratt. 148 ; *Cochran* v. *Paris* 11 *Id*. 348; 2 Lomax Dig. (324); 2 Min. Inst. 602.

V. It is neither illegal nor immoral to prefer one set of creditors to another. Until there is a legal lien by judgment or execution fixed upon the debtor's property, he may, though insolvent or in failing circumstances, convey or transfer his estate in trust; and if it be done in good faith, he may thereby prefer one creditor to another without committing fraud, within the statute, upon the creditors who are delayed or hindered by such conveyance. *Hendricks* v. *Rob-*

*inson,* 2 Johns. Ch. 306; *Sipe* v. *Earman,* 26 Gratt. 563. Nor is it an objection that the conveyance defeats all other creditors of their legal remedies, though they amount to a majority in number and value. 2 Lomax Dig. (326); *Brooks* v. *Marbury,* 11 Wheat. 78; *Williams* v. *Lord,* 75 Va. 402.

VI. A provision in the conveyance of a stock of goods or other chattels, that the trustee may continue the business, if intended merely as a means of realizing the trust-fund and with a view of winding up the business, is not fraudulent if the conveyance is proper in other respects. In such case, a provision in the conveyance that one of the grantors shall attend to the business, he being under the control of the trustee who may at any time, at the request of the creditors secured, sell the property, does not render the deed fraudulent. *Marks* v. *Hill,* 15 Gratt. 400; *Gordon* v. *Cannon,* 18 *Id.* 387; *Williams* v. *Lord,* 75 Va. 402.

VII. A plaintiff who alleges fraud must clearly and distinctly prove the fraud alleged in his bill. The *onus probandi* is on him, and if the fraud is not strictly and clearly proved as it is alleged, relief cannot be granted, although the party against whom relief is sought may not have been perfectly clear in his dealings. Fraud will not be carried by way of relief beyond the manner in which it is proved to the satisfaction of the court—Kerr on Fraud, 382; *Gibson* v. *Randolph,* 2 Munf. 310.

VIII. But the proposition that "fraud must be proved and not presumed" is to be understood only as affirming, that a contract honest and lawful on its face must be treated as such, until it is shown to be otherwise by evidence either positive or circumstantial; and if the facts established afford a sufficient and reasonable ground for drawing the inference of fraud, the conclusion, to which the proof tends, must in the absence of explanation or contradiction be adopted—*Goshorn* v. *Snodgrass,* 17 W. Va. 717; *Lockhard* v. *Beckley,* 10 *Id.* 87; *Hunter* v. *Hunter, Id.* 321.

Applying these principles to the facts in the case at bar it is plain that the charge of actual fraud against said trust-deed is not sustained. At the time said deed was executed and for several years previous thereto, C. E. Wagner, the grantor, was a resident of and doing business in the city of Wheeling,

and the *cestuis que trust* were residents of Monongalia county; that, four years before, they had become the sureties of the grantor on notes to the amount of five thousand three hundred dollars given for the purchase of the livery stock, and he then gave them a trust-deed on said stock to secure them as such sureties, which was at the time duly recorded in Ohio county; that while he was conducting the livery business in Wheeling, he from time to time drew on the *cestuis que trust* through the banks until his indebtedness to them by reason of such drafts exceeded seven thousand dollars; that said indebtedness remaining unpaid as also did four thousand five hundred dollars of the debt on which they were security as aforesaid, William Wagner, the father of said C. E. Wagner, requested said C. E. Wagner by telegram to come to Morgantown, and in response to this request he went without any knowledge of the purpose of his visit, and while there at the instance of his father and brother-in-law, the beneficiaries in the deed, he executed and acknowledged the said trust-deed of June 16, 1881, to secure to them the debt of eleven thousand five hundred dollars therein mentioned, and they at the same time assumed the payment of the four thousand five hundred dollars still due on the notes for which they as his sureties were secured by the former trust-deed, and they then and there executed a release for said former deed, and subsequently paid off the whole of said four thousand five hundred dollars. They testify that at the time said deed was executed it was the intention and desire of the parties to have a sale of the property made as soon as it could be done to the best interests of the trust; that the trustee was advised to do all he could to find a purchaser, and the grantor was also requested to advise with the trustee and assist him in finding a purchaser. One of the beneficiaries wrote a letter to his uncle in Wheeling urging him to assist in finding a purchaser, and he made a trip there himself to advise with the trustee and urge a sale of the property by him as soon as a judicious one could be made. Efforts were made by the trustee, and under his direction by C. E. Wagner, to find a purchaser, and some negotiations were had with one or more parties on the subject, but no sale was

made for the want of a favorable time and a satisfactory price.

There is no question about the *bona fides* and honesty of the debt secured. The only criticism attempted againt it is, that the four thousand five hundred dollars of the old debt due to other parties and assumed by the beneficiaries in the deed was not paid at the time and the grantor then and there wholly released. The debt was held by other parties and this may have been the reason it was not then paid. But, however this may be, they by their *assumpsit* then made become the principals in the debt and thereafter C. E. Wagner was simply their surety, and they afterwards, and before this suit was instituted, paid it, therefore, no conclusion of a fraudlent intent against the creditors of C. E. Wagner can be drawn from that circumstance. It is also claimed that the notes of Mendel and Durbin were, by agreement at the time the deed was executed, to be paid out of the trust-fund and that this showed fraud. This agreement, when fully stated, was that said notes should be protected and, if not otherwise satisfied, were to be paid out of the trust-fund and their amounts deducted from the debt secured to the appellants. This was a prejudice to the appellants in favor of other creditors and one which has no tendency to show fraud or any illegal purpose.

It is objected that the grantor continued in the possession and use of the property after the date of the deed. The testimony fails to establish that such was the case. The proot is, that after the conveyance the property and the business was under the absolute control of the trustee, and that he used the property and conducted the business from that time through C. E. Wagner as his agent. This was both legal and proper as has been frequently decided by the appellate court of Virginia and is law in this State. *Marks* v. *Hill,* 15 Gratt. 400; *Gordon* v. *Cannon,* 18 *Id.* 387.

The reason for delaying the sale is satisfactorily explained in the evidence. The parties interested used proper efforts to make a sale. The property was of a peculiar character and not such as a prudent person would or ought to dispose of at a forced sale unless the necessity was imperative. They hoped and had reason to believe that a better price could be

obtained at a later day.   Under the circumstances it was the right of the beneficiaries to delay a demand for the sale and it was the duty of the trustee to forbear to sell.   2 Min. Inst. 286–7.

The appellees rely greatly on declarations made by the grantor subsequent to the date of the deed.   These are not admissible against the appellants.   The statute expressly declares that they shall not be affected by the fraud of the grantor unless they have notice of such fraud.   It is not pretended that either they or the trustee had any notice of any fraudulent intent of the grantor at the time the deed was executed or thereafter.   The declarations relied on were made long after the execution of the deed.   The law is, as we have seen, that "a conveyance not fraudulent in its inception cannot become so by matters subsequent, for the statute requires that the *act should be done* with a criminal intent."   2 Min. Inst. 602.   Consequently, even if the declarations of the grantor disclosed a fraudulent intent existing in his mind at the time he gave the deed of which the trustee and beneficiaries had no notice, their knowledge of such intent subsequently acquired would not affect the validity of the conveyance.   If it were, therefore, conceded that the subsequent declarations and acts of the grantor clearly established the fact that as to him the conveyance was intended to delay, hinder and defraud his creditors, still in the absence of any proof or circumstances to show that such intent was known to, or participated in by, the trustee and beneficiaries the conveyance would be valid.   Nor could it affect the validity of the conveyance, if it were shown that both the grantor and trustee, with the knowledge of the the beneficiaries, after its execution used it for a fraudulent purpose.   It being valid at its inception subsequent acts could not make it invalid in its inception and thereby destroy it as a security. The only remedy of the creditors in such an event is to apply to a court of equity to prevent the fraudulent use of it by taking it out of the hands of the trustee and having the trust-fund applied legitimately.   But there is no evidence of such fraudulent employment of the trust-property in this case.   In my view of the law, it is unnecessary to follow the appellees in their construction of the testimony of C. E. Wagner.   It

is, however, but justice to him and the other defendants to state that considering the ordeal through which he passed in cross-examination, having been asked and answered nearly four hundred questions, his testimony is less confused and contradictory than is usual in such cases and taken altogether, I think his conduct in connection with trust-property, after the conveyance, is sufficiently explained by him to show, at least, that he did not intend to perpetrate any fraud or do any dishonest or illegal act. And it is certain that, if such purpose could be supposed from his acts, conduct or declarations, there is nothing even tending to prove that the trustee or beneficiaries connived at, participated in, or had any notice whatever of any such purpose, or knowledge of any acts or facts that would lead them to any such notice.

As to the relationship of the parties, it may be stated that, while the law allows no discrimination in favor of creditors by reason of their being related to the debtor, it certainly does not put them at a disadvantage. The debtor may do no more for them than a stranger; but there is no rule of law that he may not do as much. And because, when a fraudulent conveyance is intended, it is usually made to, or for the ostensible benefit of, a relative or intimate friend and for that reason conveyances between such persons are more closely scrutinized than those between strangers, it does not follow that a conveyance, which appears to be fair and honest after the most rigid scrutiny, must be declare fdraudulent and set aside, upon suspicion that it may be fraudulent, merely upon the ground that it is made between intimate friends or near relatives.

Upon any view of the case, and for the foregoing reasons, I am clearly of opinion that said conveyance is valid and that the decree of the circuit court declaring it fraudulent and setting it aside is erroneous.

The next matter to be considered, is the claim asserted by James Crangle in his petition. The justice of this claim is not questioned, but it is contended by the appellants that it is a personal debt of C. E. Wagner and not a debt of the trustee or a charge against the trust-fund. The proof plainly establishes that the feed and grain constituting this claim, were furnished at the instance of C. E. Wagner while he as

agent was in charge of the trust-property under authority
from the trustee after the conveyance; that it was necessary
and was actually used to feed the horses conveyed by the
trust-deed and belonging to the trust-fund. It is true that
the trustee refused to give a written order for this feed, but
he did not notify Crangle that he should not furnish it to
Wagner as his agent or on account of the trust-fund, and,
therefore, we must conclude that the reason why the trustee
refused to give a written order was that he, having no money
in his hands to pay for feed, did not choose to make himself
liable for it. In any event, however, it is certain, that if the
trustee had as such incurred this liability, it would have been
a legitimate part of his expenses and paid out of the trust-
fund as such. *Strong* v. *Skinner*, 4 Barb. 561; *Therasson* v. ·
*Hickok*, 37 Vt. 454–64–5; *Janney* v. *Barnes*, 11 Leigh 100;
*Clark* v. *Ward*, 12 Gratt. 440.

The trustee having authority to furnish and charge the
fund for feed as a part of his necessary expenses, and he
having failed to do so, but permitted Crangle to furnish this
necessary support for the trust-property to his agent on the
faith of the trust-fund, and thereby created such claim,
Crangle should be paid in the same manner as if the trustee
had incurred the debt—*Conrad* v. *Buck*, 21 W. Va. 396. The
said claim having, as appears, been incurred in good faith
and no question having been raised as to its reasonableness, I
am of opinion that it should be paid as a part of the expense
account of supporting and preserving the trust-property. · ·

Where a deed is valid in its inception it cannot be de-
clared void for matter *ex post facto*—*Estwick* v. *Caillaud*, 5
Tenn. R. 425; Shep. Touch. 67. But, if it be afterwards
employed for a fraudulent or improper purpose, a court of
equity in a proper case will interpose by injunction and the
appointment of a receiver, or otherwise, to prevent such use
of it. And when the deed is valid, but reserves an interest
to the grantor, such interest may be subjected by a court of
equity, on the application of any unsecured creditor, to the
debts of the grantor—*Lewis* v. *Caperton*, 8 Gratt. 148; *Sipe*
v. *Earman*, 26 Gratt. 566–9. In such case a bill filed for the
double purpose of attacking the conveyance and, also, to
prevent such improper use of the trust-fund, or subject such

reserved use to the debts of the grantor, will not be dismissed although the conveyance is held to be valid, but will be sustained and the alternate relief to which the plaintiff may be entitled to be administered in the suit. But if the suit fails in both aspects, the bill should be dismissed. In this view it is manifest that the bill in this case should have been dismissed by the circuit court at the first hearing, but that court having, instead of dismissing the suit, perpetuated the injunction and ordered a sale of the trust-fund which was made and confirmed, and the appellants having failed to appeal promptly from the order refusing to dissolve the injunction, as they might have done—chapter 157, section 1, Acts 1882, page 505—or even to except to the sale before confirmation, the sale cannot now be set aside, although the decree ordering it was erroneous—ch. 132, § 8, Code, p. 630; *Sinnett* v. *Cralle,* 4 W. Va. 603; *Capehart* v. *Dowery,* 10 *Id.* 130.

In this suit the plaintiffs having failed to sustain the allegations of their bill in every aspect of the case, it must be held that the same was improperly brought and they are consequently liable for and should be required to pay the defendants, Thorton Pickenpaugh and William Wagner, the costs incurred by them in their defense in the circuit court.

. . I am, therefore, of opinion that the aforesaid decrees of May 3, 1882, and of October 7, 1882, be reversed and annulled, except so much of the latter as confirms the sale of the trust-property and directs the payment of the debt of James Crangle, and the rents for the leased premises to John · Reid, with costs to the appellants against the appellees, the plaintiffs below, and this cause is remanded to the said circuit court with directions to that court to order the funds in the hands of its general receiver, or which may hereafter come to his hands, belonging to, or arising from the sale of the trust-property or the collection of the choses in action conveyed by said trust-deed of June 16, 1881, to be paid to the beneficiaries in said deed, subject to the aforesaid debt of James Crangle the balance due for rent, and the allowances made to Robert Marshall as special receiver and to Guy R. C. Allen, trustee, for their services to the amount ascertained and fixed by said decree of October 7, 1882, and

for further proceedings to be had therein according to the principles announced in this opinion.

THE OTHER JUDGES CONCURRED.

·DECREES REVERSED IN PART.  CAUSE REMANDED.