Bidault *v.* Wales.

---

BIDAULT *et al.*, Respondents, *vs.* WALES, Appellant.

1. A party who purchases goods on credit, knowing at the time his insolvency and inability to pay for them, but without a preconceived design not to pay, is not guilty of such fraud as will avoid the sale.

*Appeal from St. Louis Circuit Court.*

*Knox & Kellogg,* for appellant. After a sale and delivery of merchandise, the vendor cannot recover the goods for the reason that the vendee was insolvent at the time he made the purchase, and then knew himself to be so. Story on Sales, §446. *Cross* v. *Peters,* 1 Greenl. 376. 2 Mason's Rep. 236. 6 Wend. 77. 12 Pick. 307.

*A. Buckner,* for respondents, cited Story on Sales, §176. *Ro&ley* v. *Bigelow,* 12 Pick. 312.

SCOTT, Judge, delivered the opinion of the court.

Bidault & Co. stated, in their petition, that they sold at New Orleans to A. W. Whiting, of whom the defendants are con-

signees, sixteen hogsheads of sugar, to be paid for ten days after the sale ; that Whiting failed to pay at the time agreed upon ; that when the sale took place, Whiting was insolvent and wholly unable to pay for the sugar ; that his inability and insolvency were then well known to him, and that he was then unable to comply with his promise ; that for the causes and reasons aforesaid, Whiting procured the possession of said sixteen hogsheads of sugar by false pretences and fraudulent practices and acts.    On a trial, there was a judgment for the plaintiffs.

1. From the face of the petition, it appears that the only fraud and deceit practiced by Whiting, was the purchasing of the sugar, knowing his insolvency and inability to pay for it ; for the fraud and fraudulent practices charged, are only stated as a conclusion from the fact that Whiting knew of his insolvency and inability to pay, at the time of the sale ; so the case raises the question, whether, if one knowing his insolvency and inability to pay, purchases merchandise at ten days' credit, for which he afterwards fails to pay, is guilty of such deceit as will avoid the sale.

This case steers clear of the question, as to the vendor's right of stoppage in transitu in the event of the insolvency of the vendee, before an actual or constructive possession by him of the merchandise sold.    Here the sale was consummated by the delivery of the subject matter of it.    No case has been found, in which it is maintained that the insolvency of the purchaser, though known to himself and unknown to his vendor, would avoid the sale.    The law, as stated by Wm. Story, in his work on sales, §146, is not supported by the case to which he refers, and afterwards, in the same work, §446, he says, that the mere fact of the insolvency of the vendee, and his liability to immediate attachment, though well known to himself and not disclosed to the vendor, would not, ordinarily, amount to such a fraud as to avoid a sale and enable the vendor to bring trover.    The rule, as deduced from the cases, seems to be, that no property passes to the vendee, if he purchased the goods with the preconceived design of not paying for them.

*Earl of Bristol* v. *Welsmore*, 1 Barn & Cres. 520. *Noble* v. *Adams*, 7 Taun. 59. Chitty on Contracts, 405. Addison on Contracts, 49. *Lupin* v. *Marie*, 6 Wend. 82. 1 Greenl. Rep. 376. The question in these cases is one for the jury, and is, whether the vendor had made an improvident sale, or the vendee had fraudulently obtained the goods ; whether there was a deliberate plan to obtain the goods, knowing they never would be paid for, which may be evidenced by a resale of them at a sacrifice, an assignment in insolvency or to a favored creditor, or absconding with the goods, or other circumstances, or whether he intended to continue his business and to try to pay for the goods at some time or other.

There is no cause of action set out in the petition, according to these principles. The other judges concurring, the judgment will be reversed.