# CHARLESTON.

LANDEMAN v. WILSON & BEARDSLEY et al.

Submitted January 24, 1887.—Decided April 11, 1887.

1. TRUSTS AND TRUSTEES—FRAUD.

A provision in a deed of trust authorizing the trustee to sell the property at private sale does not render the deed fraudulent on its face. (p. 709.)

2. TRUSTS AND TRUSTEES—FRAUD—EVIDENCE.

When the court is called upon to decide, whether a deed is fraudulent on its face, it must decide the question on an inspection of the deed alone.  (p. 715.)

E. TRUSTS AND TRUSTEES—FRAUDS—INTENT OF GRANTOR.

Unless upon an inspection of a deed claimed to be fraudulent on its face the court sees, that it contains some provision, which clearly shows, that the intent of the grantor in executing the deed was to hinder, delay or defraud his creditors, the court can not hold the deed fraudulent on its face.  (p. 716.)

4. TRUSTS AND TRUSTEES—CREDITORS.

Every creditor, who has been injured, has a right to the protection of the court; and his legal rights can not be made to depend upon what any other creditor or a majority of the creditors may say or do with regard to the debtor's property, after the preferred creditors have been satisfied.  (p. 717.)

5. TRUSTS AND TRUSTEES—FRAUD.

Two grantors make an assignment of their property to secure three classes of creditors, named in the deed, in the order therein named.   In the deed the assets are valued by the grantors and the deed is silent as to any other creditors than those therein specified; and the value of the property, as fixed by themselves, far exceeds the amount of the debts secured; and among the property is a flouring-mill by them valued at $20,000.00, almost one half of the whole property; and the following provision is inserted in the deed :—" And should the said trustee * * * deem it to the best interest of *said* creditors " (the secured creditors) " he is hereby authorized *either to rent or run the mill-property* * * * *for the period of one or more years or for a greater or less period of time, as shall seem to him advisable after having consulted with said creditors and obtained their consent or the majority in interest herein.* "—HELD :—The deed is fraudulent on its face.  (p. 718.)

6. TRUSTS AND TRUSTEES—FRAUD.

A deed, if fraudulent as to any provision therein, is void *in toto* as against creditors, who are entitled to take advantage of the fraud.  (p. 719.)

7. FRAUD.

Point 2 of the syllabus in *Delaplain* v. *Armstrong*, 21 W. Va. 211, reaffirmed.  (p. 720.)

8. TRUSTS AND TRUSTEES—FRAUD—AFFIDAVIT.

Where an affidavit is filed, upon which an attachment is issued, and it charges, that the grantors made the assignment with intent to hinder, delay and defraud their creditors, and as "mate-

rial facts" sets out the provision of the deed, in which said intent is claimed to appear, and avers, that for such provision the deed is fraudulent on its face, the affidavit is supported by such "material fact." (p. 720.)

*J. H. Ferguson* and *J. F. Brown* for plaintiff in error.

*Simms & Enslow* for defendant in error.

JOHNSON, PRESIDENT:

On the 9th day of December, 1884, Wilson & Beardsley, a firm operating a large flouring mill in Cabell county, in this State, made an assignment of their property both real and personal including their flouring mill, to W. T. Thompson, trustee, to secure certain creditors therein named, who were divided into three classes and preferred in the order named. This deed was recorded on the 10th day of December, 1884. The plaintiff who held a claim for $722.04, which was not secured in said trust, brought his action in assumpsit in the Circuit Court of Cabell county on the 20th day of December, 1884, and filed his affidavit and sued out an attachment and had the same levied on the real estate included in said trust and garnished W. T. Thompson as having in his hands money and effects belonging to said firm. On the 2d day of March, 1885, the attachment was docketed and on the 25th of the same month the defendants appeared in court and confessed judgment on the plaintiff's claim and moved to quash the attachment, on the ground that the affidavit filed was insufficient to support the attachment. On the 19th day of August, 1885, the court overruled the motion to quash. W. T. Thompson, trustee, then filed his petition under the statute claiming the attached property as such trustee and having given bond, as the statute required, the question of the right of the property was tried before a jury; and on the 21st day of August, 1885, the jury rendered a verdict against the petitioner; and Thompson having before answered the suggestion against him, that he had sufficient funds in his hands of the firm of Wilson & Beardsley to pay the plaintiff's claim, the court entered judgment for the claim and costs.

To this judgment the said Thompson and the said Wilson & Beardsley obtained a writ of error.

Thompson took a bill of exceptions to certain rulings of the court made on the trial of his petition, by which it appears, that, to sustain his claim to the property, he offered in evidence the deed of assignment and schedules "A" and "B" thereto annexed, to which the said Landeman objected, on the ground that the said deed was fraudulent on its face, which objection the court sustained and refused to permit said deed and schedules to go to the jury; and the petitioner excepted. The petitioner again offered said deed and schedules in evidence proposing to follow with evidence, that the express object and purpose of said Wilson & Beardsley in the insertion in said deed of the provisions in relation to the renting and operating of the mill, was to secure and insure to the creditors named therein the largest sum possible for the payment of their debts; and that it was then believed and understood by said Wilson & Beardsley, that in the financial depression then prevailing in Huntington, where said mill was situated, as well as in the whole country, a speedy sale would produce but a small part of its value, and to let it lie idle would impair its value; and that under these circumstances it would be better to postpone the sale for a reasonable time, and in the meantime to rent it. To the reading of which deed and schedules Landeman objected; and the court sustained the objection and refused to permit the deed and schedule to be read; and the petitioner again excepted.

The deed offered in evidence provided as follows:—"In executing this trust, and to carry out the purposes thereof, the said trustee is to proceed to collect by himself or agent and attorney appointed by himself all and singular the notes, bonds, bills and evidences of debt and to make sale of all the property of every kind mentioned in schedule "A" either at public or private sale, as may seem to be to the best interest of the creditors of the said Wilson & Beardsley. And should the said trustee, W. T. Thompson, deem it to the best interest of said creditors, he is hereby authorized either to rent out or run the mill-property in the city of Huntington, Cabell county, West Virginia, hereby conveyed, known as the Biggs Mills, for the period of one or more years or for a greater or less period of time, as shall seem to him advis-

89

able, after having consulted with the said creditors and obtained their consent or the majority thereof in interest herein."

The latter clause is the one, on which the Circuit Court based its judgment, that the deed was fraudulent on its face. The deed does not provide for the payment of the creditors generally. It divides the creditors therein mentioned and secured into three classes and gives priority in the order named; and no provision is made for the disposition of the surplus, if there should be any.

Schedule "A" is substantially as follows:

### REAL PROPERTY.

| | | |
|---|---:|---:|
| Warehouse and staple on block No. 95 .......... | $500 00 | |
| Biggs Mills, in Huntington, &c... .............. | 20,000 00 | |
| Interest of Beardsley in land................... | 4,000 00 | |
| "        "        in other land............. | 830 00 | |
| "     of Wilson in land................. .... | 250 00 | |
| | | $25,580 00 |

### PERSONAL PROPERTY.

| | | |
|---|---:|---:|
| Flour &c...... ........ .................... | 3,842 27 | |
| Debts due firm................................ | 15,703 51 | |
| | | 19,545 78 |
| | | $45,125 78 |

Schedule "B" shows indebtedness:

| | | |
|---|---:|---:|
| To 1st class...................... ...... .... | $11,035 00 | |
| " 2d   "   ............... ........ ......... | 11,970 00 | |
| " 3d   "   .... ... ........ .  .. ......... . | 1,902 00 | |
| | | 23,907 00 |
| Leaving a surplus........................... | | $21,218 70 |

The deed purports to convey all the property both real and personal of the grantors. Is the deed fraudulent on its face; and was the refusal of the court to permit it to be read in evidence right? The owner of property may do as he pleases with it, so long as no other person has any interest in it. He may, when he is out of debt, convey it to whomsoever he pleases, although he receive no consideration therefor. If he owes no one, he can do absolutely as he pleases with his own, unless restrained by statute. He may in good faith convey his property or any part of it to secure

the payment of his debts or a part thereof. He may designate the beneficiaries by name or by any other mode. He may prefer some of his creditors over others, and may for a reasonable time postpone the execution of the conveyance, which is to strip him of his property. In such conveyance he can reserve to himself no benefit at the expense of his creditors. In cases where he postpones for a definite time the final consummation of the security, which he has created, and reserves to himself the use of the property during such time, it has been held, he is not to be regarded as delaying or hindering his creditors within the meaning of law, because the interest so reserved is liable to creditors acquiring liens by judgment or execution. ( *Cochran* v. *Paris*, 11 Gratt. 348; *Dance* v. *Seaman*, Id. 77; *Quarles* v. *Kerr*, 14 Gratt. 48.) In all or at least in most of the cases in Virginia and in this State, where deeds of trust have been held fraudulent on their face, it appeared, that the property conveyed or a part thereof was of a perishable nature, and the deed contained a clause permitting the debtor to retain possession and control.

In *Lang* v. *Lee*, 3 Rand. 411, the deed was held void. It disposed of "all the entire stock of goods in the possession of the said Lee in his store in the city of Williamsburg; * * * that the said goods are to remain in said Lee's possession, and he is empowered to make sale of them and to account with the trustee, if called on."

In *Shepperd* v. *Turpin*, 3 Gratt. 373, the deed provided after conveying the whole of the grantor's property, consisting of a lot of ground, a number of slaves, horses and other personal property, that if the grantor failed to pay the debts secured before the 1st of March, 1816, (three years after the deed was executed) it should be optional with a majority of the creditors, who might assent to the deed, either to extend further time or to require the trustees to sell the property for cash to raise the amount then due to the assenting creditors; that the trustees should have power to aid said grantor in carrying on his business of brick-making by a loan of as much money, as in their judgment would be sufficient to enable him to prosecute his business, and, if after such aid they should think him injudicious or unthrifty,

they might at any time before the day limited for the payment take possession and sell the property. This deed was also held void.

In *Spencer* v. *Bagnell*, 6 Gratt. 444, the deed was executed on the 1st of November, 1841, and provided that the grantor "should be permitted to remain in possession of the property and use the same and enjoy the profits thereof until the 1st of March, 1843." This deed was also held to be void.

In *Addington* v. *Etheridge*, 12 Gratt. 436, the deed provided that the grantor should keep possession of and sell the stock of goods in the usual line of his trade and occupy the store until default in the payment of any of the debts secured, and until the trustee should be requested by any of the creditors secured to close the deed by a sale. This too was held void.

In *Kuhn, Nutter & Co.* v. *Mack Bros.*, 4 W. Va. 186, the deed permitted the grantor to retain possession of goods and sell them in his business. This deed was held void.

In *Gardner* v. *Johnston*, 9 W. Va. 403, wheat and other perishable property by the terms of the deed was to remain in the possession of the grantor. This Court held the deed void.

In *Claflin* v. *Foley*, 22 W. Va. 434, the deed provided, that the conveyance should include "such goods and merchandise, as may be added to said stock from time to time by the grantor and brought into the store in the course of business or to take the place of such goods, as may hereafter be sold," but did not authorize the trustee to take possession or control of said goods, until the grantor should make default in payment, &c. The deed was held void.

In *Livesay* v. *Beard*, 22 W. Va. 585, the deed of lands and personal property fixed no definite period, at which a sale could be required, and put it in the power of the grantor by collusion with a part of the creditors to indefinitely postpone a sale under the deed. The deed also provided that all the live stock conveyed by the deed and the increase thereof and all future crops, until sale should be made, should be in the quiet enjoyment of the grantor, from which he might support his family and pay the

debts secured as he might deem most advantageous. This deed was held void, as were similar deeds in *Klee* v. *Ritzenberger*, 23 W. Va. 75, and *Shattuck* v. *Knight*, 25 W. Va. 580.

It is insisted by counsel for plaintiff in error, that there is nothing in the deed here under consideration, which reserves any possession or any interest in the grantor and nothing in the powers conferred upon the trustee, which can be fairly construed to hinder, delay or defraud the creditors of Wilson & Beardsley, the grantors. The deed provides for a sale either public or private. The provision, that the trustee might sell at private sale would not make the deed fraudulent on its face. (*Shackelford* v. *Bank*, 22 Ala. 238; *Burgiss* v. *Burgiss*, 1 Ired. Law, 453; *Skipworth* v. *Cunningham*, 8 Leigh, 273; *Kyles* v. *Harveys*, 25 W. Va. 729.) If the deed is fraudulent on its face it is rendered so by the following provision: "And should the said trustee, W. T. Thompson, deem it to the best interest of the said creditors, he is authorized either to rent out or to run the mill-property in the city of Huntington, Cabell county, West Virginia, hereby conveyed, known as the Biggs Mills, for the period of one or more years or for a greater or less period of time, as shall seem to him advisable after having consulted with the said creditors and obtained their consent or the majority thereof in interest herein." It is argued, that such a provision is no more fatal to a deed, than were the provisions in the deeds in the following cases: *Jones* v. *Whitbread*, 5 Eng. L. and Eq. 431; *Coates* v. *Williams*, 9 Eng. L. and Eq. 481; *De Forest* v. *Bacon*, 2 Conn. 633; *Kendall* v. *Corfat*, 13 Conn. 383; *Cunningham* v. *Freeborn*, 11 Wend. 240; *Woodward* v. *Marshall*, 22 Pick. 468; *Robins* v. *Emory*, 1 Sm. & M. Ch'y 207; *Dunham* v. *Waterman*, 3 Duer 166 and *Marks* v. *Hill*, 15 Gratt. 400, where the deeds were held to be valid. We will examine some of these cases.

In *Jones* v. *Whitbread* an assignment was made by a debtor of all his estate and effects to a trustee upon trust for sale for the benefit of the creditors, and contained a provision enabling the trustee to employ the debtor or any other person "in winding up the affairs of the debtor and in col-

lecting and getting in his estate and effects and in carrying on his trade, if thought expedient by the trustee, and to allow the person so employed out of the trust-estate such sum as the trustee should deem proper." It was held that the *carrying on the trade* being only ancillary to winding up the affair of the debtor, the deed was not void. The court distinguished that case from *Owen* v. *Body*, 5 Ad. & El. 28—Jarvis, C. J., said—" The argument of this case has shown, that *Owen* v. *Body* is not applicable to it. There one of the purposes of the trust was to cary on the trade, and Lord Denman in delivering the judgment of the court, that the assignment was not good, said:—' The deed imposed such terms, as might have constituted a partnership among the persons executing; and those were terms, to which creditors were not bound to submit.' In the present case however the deed contemplates the selling the property assigned and the winding up the affairs of the debtor, and only authorizes the trustee to go on with the trade for the purpose of winding up, which is the principal object of the deed, the carrying on the trade being no more than ancillary to it."

In *Robins* v. *Emory* it appeared, that a railroad corporation assigned its property for the benefit of its creditors. The road had been nearly completed, and the means of the corporation were exhausted, and the period for completing the road under its charter had nearly expired, and the expiration of the time without the completion of the road would forfeit its charter. The road in condition at that time would be comparatively worthless ; and if it should not be completed, the amount already expended would be a total loss to the company. It was held, that a provision in the deed authorizing the assignees to borrow $250,000.00 to complete the road and pledging the assets of the company and the profits of the road for the payment of the same before any of the other debts *did not vitiate the assignment ;*— that an assignment otherwise free from the imputation of fraud is not vitiated by the fact, that it was made in part to secure anticipated advances, especially when those advances are in aid of the general purposes of the assignment.

In *DeForest* v. *Bacon* there was a provision in a deed conveying a brush-factory &c. to the following effect:—" The trustees are to have power to conduct and carry on the manufacturing of brushes of various kinds and descriptions, until all the material now on hand shall be consumed, and to purchase such articles, as are necessary to manufacture and work up all the raw material on hand." The court held the deed valid.

In *Kendal* v. *Carpet Co.* the assignment was of a carpet-mill. The deed provided, that the assignor should have the right to make up the stock on hand and to make purchases necessary for that purpose. The court said:—" That such a power may be greatly beneficial to all parties connected with the affairs of a large manufacturing establishment, is very apparent. That such a concern should be suddenly suspended, and the stock in the various stages of manufacture be sold in parcels or together, must greatly diminish the value of the property to the creditors and impair their security. Accordingly it has been holden by this court, that such a power fairly conferred was a valid power (*DeForest* v. *Bacon*, 2 Conn. 633.) We see no cause to reverse that decision. It is indeed a power, which may be abused; but the interest of vigilant creditors will generally prevent its being used improperly, or, if it is, procure its detection."

The case of *Marks* v. *Hill*, 15 Gratt. 400, is much relied on by counsel for appellant. They say, that in that case the authorities above cited are approved. In that case Hill & Nichols, partners in business, executed a deed of trust upon their stock of goods to one Collier, to secure, *first*, a debt of $2,500.00 due from Hill to one Bragg, and a note of Nichols's for $2,000.00 endorsed by one Thompson and the trustee, Collier; *second*, certain firm-debts "in trust, that Collier with the consent in writing signed by Bragg and Thompson should permit Nichols as agent *to carry on said business*, the stock of which was thereby assigned, with *authority to replenish said stock*, for the purpose of paying off the debt of Hill to Bragg and said note of Nichols's and in trust also, that Collier should proceed to dispose of the effects of the firm and collect the credits specified in a schedule annexed to the deed, and pay the debts of the firm specified in

another schedule. Out of the collection of said credits and any sale of said effects first to pay the expenses of the trust, then to pay the borrowed money, and next to pay ratably the debts in the schedule. There was also the further stipulation, that the agency of Nichols should be arrested, whenever Bragg, Thompson or Collier or any three of the other creditors should in writing give direction to Collier to make sales. Judge Daniel after referring to the decisions, we have cited, authorizing a trustee to wind up the business of a concern, says, he sees no necessary conflict between these decisions and the cases of *Exchange Bank* v. *Inloes*, 7 Md. 380, and *Whallon* v. *Scott*, 10 Watts 237, in which the deeds were held fraudulent on their face. The deed in 7 Md. provided, that the trustee might at his discretion sell gradually the goods "in the manner and on the terms, in which in the course of their business the grantors had sold and disposed of their merchandise." No time was fixed for the winding up of the business and no power was given the creditors to have the trust closed. The court said, that the deed was simply a contrivance through the instrumentality of a trustee to provide for carrying on the business of the concern in the same manner as it had been before conducted and for an indefinite period free of all control or interference on the part of the creditors, and that he could not thus postpone his creditors to an indefinite period without their consent. The court further said, as quoted by Judge Green in *Kyle* v. *Harvey*, 25 W. Va. 730, after citing the class of cases permitting a power to a trustee to wind up the business—" But it will be found on examination of these cases, that most, if not all, of them rest upon the important principle, not applicable to the present case, that the stipulation in question was designed more effectually to promote the interests of the creditors, and not intended for the benefit of the debtor, or where it was intended to be auxilliary in the winding up of the debtor's business, as where he had on hand at the time of the assignment unmanufactured materials in the way of his business or the like."

Judge Daniel in reviewing the latter case says :—"It was however concluded by the court, that there might be cases, in which the stipulation in question would be proper,

where it was designed to be ancilliary to the winding up of the debtor's business, or was designed more effectually to promote the interests of the creditors and not intended for the benefit of the debtor." After reviewing *Whallen* v. *Scott,* 10 Watts, he says :—" I find nothing in the facts of the case or in the language of the courts, which would make the decision or the opinion in that case authority for denying to a debtor in making an assignment for the benefit of creditors the power to enter into *stipulations* for the winding up of the business, as were sustained in the cases, I have cited."

How long would it take in a case like *Marks* v. *Hill,* to wind up the business, when the seller of the merchandise was continually from the proceeds of sale "replenishing the said stock?" In the case in 7 Md. there was no express provision for "replenishing the stock," yet the court held that deed void on its face.   Daniels, Judge, in *Marks* v. *Hill* applies the principles of those cases, which are manifestly right, to the facts in his case, to which, it seems to me, the cases are wholly inapplicable.   He says, pp. 412, 413 :

"In the deed under consideration the clause conferring upon Nichols as agent the power to carry on the business and replenish the stock does not in terms declare, nor is it in any other part of the deed declared, that the power is given for the purpose of winding up the business of the concern.   But on reading the clause in connection with the other provisions of the deed, and more especially the provision contained in the last paragraph, the true construction to be put on the provision directing the manner of disposing of the goods and their proceeds taken as a whole is, I think, that Collier is vested with the power, as soon as he shall deem it advisable or as soon as he shall be requested in writing either by Bragg or Thompson, the preferred creditors, or by any three of the other creditors to make sale of said goods at auction in such way, as the said Collier shall judge best for the benefit of the parties interested ; and that in the meantime Collier with the consent of the said Bragg and Thompson may employ Nichols as his agent to sell the goods at private sale and replenish the stock, whilst so carrying on the business ; and that the pro-

90

ceeds of the sales, whether of the sales made by Collier at
auction or of those made by Nichols whilst continuing the
business, are to be applied in the payment of the two pre-
ferred debts. So construing the deed I can not see, that there
is any provision in it inconsistent with an honest surrender
by a debtor to his creditors of his property for the payment
of his debts. The grantors have parted completely with all
their property, and with all dominion and control over it."

This it seems to me is a forced and unnatural construction
of the deed, which goes to the verge of, if not beyond, the
just rule, which compels a debtor to make a complete sur-
render of his property for the payment of his debts.

In *Jones* v. *Syer*, 52 Md. 211, it was held, where an assign-
ment professing to be for the benefit of creditors generally
of certain goods, stock in trade and other personal property,
contained a clause authorizing and empowering the trustee
"to carry on and conduct said business *in his discretion, for
such time as in his judgment it shall be beneficial to do so,*
or to sell all such goods and the stock in trade and property,
*at such times, in such manner, and for such prices as he*
may deem proper, and apply the proceeds, &c.," that the
certain effect of this clause would be to hinder and delay
creditors, and as against them such provision rendered the
deed void; that a deed must speak for itself, and its ob-
noxious provision cannot be aided, modified or explained by
extrinsic evidence. For the court, Alvey, J., said:—" It is
an attempt on the part of the debtor to place his property
for an uncertain and indefinite period beyond the reach of
his creditors, and to make their rights in a great measure
dependent upon the uncontrolled discretion of a trustee of
the debtor's own selection. The law will tolerate no such
attempt but treats the act as a fraud upon creditors, and the
instrument of conveyance as simply void as against them."

In *Gardner* v. *Bank*, 95 Ill. 298, it was held, that the
placing of property in the hands of an assignee for any other
purpose than to distribute it or its proceeds among creditors
is fraudulent and void as to creditors. If made to procure
time for the assignor, it is fraudulent, and when the assignor
has, or thinks he has, more property than is necessary to pay
his debts, the assignment can only be presumed to be in-

tended for his own benefit; for in that event he only is to be profited.   A clause in an assignment for the benefit of creditors authorizing the assignee to carry on the business of the assignor "for such time, as the assignee may deem necessary to prevent shrinkage and loss, and closing out and liquidating the same to the best advantage," where the deed recites, that the assignor has property sufficient to pay three times what he owes, together with a clause, that the assignee may make, assign, endorse, and guarantee any and all bills of exchange and promissory notes or other papers for any new indebtedness that may be contracted in carrying on the business, and to lease or mortgage the real estate, *etc.*, unless compelled sooner to close upon the request of a majority of the creditors, clearly vests power in the assignee to hinder and delay creditors and renders the assignment fraudulent. Mr. Justice Schofield, in delivering the opinion of the court, quoted approvingly, the following from the opinion of the Vice Chancellor in *Van Nest* v. *Zoe et al.*, 1 Sandf. Ch'y 4 : "The debtor who believing himself more than solvent, places his property beyond the reach of the process of the law, whatever may be the pretence under which he cloaks the act, in the language of the statute of frauds "hinders" and "delays" and ultimately defrauds his creditors.   It is no answer to this assignment to say, that the debtor provides an ample fund for the payment of the debt, and that the creditor is *ultimately* to be paid in full.   The law gives to the *creditor* the right to determine whether his debtor shall have further indulgence, or whether he will pursue his remedy for the collection of the debt.   The deferring of payment is generally an injury to the creditor, and he may be overwhelmed with bankruptcy for the want of the fund which is locked up by the voluntary assignment of his debtor.   It is mockery to such creditor to say, that the assignment is made for the benefit of creditors."

While the authorities, outside of Virginia and this State, are more stringent as to the rights of debtors in making assignments, yet I have found no case in Virginia or in this State, that would sustain the provision in the deed, we have before us.   How stands the provision in this deed?   The question is :   Taking the deed alone, do any of its provisions

show an intent on the part of the debtors to hinder or delay their creditor? If a deed is void in law for matters appearing on the face thereof, it cannot be made good by evidence *aliunde* showing, there was no such intent. We are to look to the character with which the law stamps the deed without reference to extrinsic facts or to motive. If the law imputes to the grantor a fraudulent design in making the deed, no evidence of intention can change the presumption. If the law declares such deed to be void, it is no matter how the question of fraud in fact may stand.

(*Trammel* v. *Truber*, 3 Md. 11; *Inloes* v. *Bank*, 11 Md. 183; *Jones* v. *Syer*, 52 Md. 211.)

In *Malcom* v. *Hodges*, 8 Md. 418, it was decided, that the validity of deeds must be determined without regard to the surrounding circumstances, which in that instance were, that a large majority of the creditors had examined the affairs of the debtor and concluded unanimously, that it would be to the advantage of all the creditors, that an assignment should be made, and the deed in question was executed accordingly; and in reference to the argument of counsel that the grantors had derived no benefit from the reservation by resulting trust, and that the creditors were not injured by that feature of the deed, as there was no surplus, it was said: "We cannot look outside the assignment to ascertain, whether there will be a surplus or not. That would make the efficiency of the instrument depend on extrinsic circumstances, when the law requires, that its intent shall be gathered from its face."

In the opinion of this Court in *Kyle* v. *Harveys*, delivered by Green, J., great stress was laid upon the fact, that it was evident, that the debts could not be paid out of the property conveyed. There the question was, whether a provision authorizing the trustee to sell the goods at private sale made the deed fraudulent, and it was held, it did not. Judge Green says in that case, 25 W. Va. 727: "The property of the debtor, W. T. Earles, being as appears on the face of the assignment of September 24th, 1882, insufficient to pay his debts, the effort to protect it from sacrifice by the insertion of the provision, that the assignee Neal should sell the goods transferred at private sale, was not inconsistent with fair

dealings and honesty, and instead of violating the policy of the law, or the rights of creditors it is in harmony with both and exempt from the charge of fraud." Again on page 732 he says: "The grantor evidently thought that a public sale of his stock of goods might result in a sacrifice and a loss to his creditors; for it must be borne in mind that this assignment shows on its face that the grantors regarded this stock of goods as entirely insufficient to pay their debts secured by it."

On the deed before us the contrary appears upon the face of the deed. The estimate of the value of the property by the grantors themselves in the deed is much more than the debts therein secured. The deed commences: "Whereas the said Wilson & Beardsley are justly indebted in sundry and considerable sums of money, and have become unable to promptly pay and discharge the same, and are desirous of conveying all their property and rights of property as here-inafter mentioned; Now therefore this deed, witnesseth," &c. It does not pretend to mention any creditors except the three classes therein referred to, who are preferred in the order named. How many outside creditors there may be, does not appear. The plaintiff here is certainly an un-secured creditor, and his rights are just as sacred as if a hundred more stood in the same position with him. Now what do these grantors provide? They provide for a trust-sale of all the property and that the mill-property need not be sold for an indefinite period of time, if the trustee thinks it to the best interest of the secured creditors, not the unse-cured; their rights are not to be considered at all. If the said trustee deem it advisable after consulting with the said secured creditors and obtaining their consent or the consent of a majority in interest of them, that is, by obtaining the consent of Biggs, who held $11,035.00 of the debts, and the Peabody Insurance Company, which held $4,000.00, making a majority in interest, that is, by consulting two of the six-teen secured creditors, and obtaining their consent, he is authorized "to rent out or run the mill for the period of one or more years or for a greater or less period of time," that is, run it indefinitely for ten, twenty or more years; or rent it for ten, twenty or more years, and thus put it out of his

control. He would be powerless to do anything except to secure the rent and apply the proceeds to the extinguishment of the debts in the order of their priority. All the property set out is by the grantors valued at about $45,-000.00; the mill they value at $20,000.00. Now suppose Biggs and the Peabody Insurance Company agreed, that the trustee may rent the mill for ten years, and it is so rented, and then the personal property is sold and comes within five thousand dollars of paying the secured debts, all the creditors would be delayed for at least ten years in the collection of their claims, and the unsecured creditors would be at the mercy of the trustee. There is nothing for them, until the expiration of the lease. They can not have the property sold subject to the lease, if the deed is valid, because it was to be rented insted of being sold. It seems to me scarely possible to imagine a clearer scheme to hinder and delay creditors. It would be the necessary effect of the exercise of such a power, and, as men must be presumed to intend the necessary consequences of their acts, we are compelled to hold, that the said deed shows on its face, that it was executed with the intent to hinder, delay or defraud creditors of Wilson & Beardsley. There is no good reason shown on the face of this deed to postpone the sale of the mill.

The case can not be brought within the scope of the decisions, we have cited, justifying a clause in a deed permitting business to be carried on until it was wound up. Looking at the circumstances disclosed in the deed, the property being worth more than the debts secured it is very evident to my mind, that the intent in inserting the provision to run or rent the mill, was not to benefit the creditors, but to benefit the debtors, to delay the sale, until the mill at a sale would bring more money. The law does not tolerate any such practice as that. When a debtor devotes his property to the payment of his debts, he must not in the assignment regard his own interest at all, and if a provision is inserted to postpone the sale beyond a reasonable time, it will be held to be for the debtor's interest; and, if he can not hold the possession himself against the interest of his creditors, the trustee appointed by him can not be permitted to do the same thing for him. The grantor can not place his property in the

power of a majority of his creditors, either in numbers or interest, to the injury of any other creditor. Every creditor must have the same right to have the property sold for the benefit of all the creditors. Said creditor may not have the right to an equal participation in the proceeds, for the debtor may prefer some of his creditors; but he has a right to have the property sold and to participate in the surplus, after the preferred creditors are satisfied. The deed by reason of the provision, we have been considering, is fraudulent on its face.

But while it is void as to said power, is it void *in toto ?* A deed held fraudulent on its face is so held, because the court is under the law compelled to declare, that it was executed with intent to hinder, delay or defraud creditors. It has often been held and may be considered as well settled, that where an assignment is fraudulent as to any of its provisions, it is void *in toto* as against creditors, who are entitled to take advantage of the fraud. (*Pierson* v. *Manning*, 2 Mich. 446; *Caldwell* v. *Williams*, 1 Ind. 405; *Burke* v. *Murphy*, 27 Miss. 167; *Mackie* v. *Cairns*, 5 Cow. 548; *Goodrich* v. *Downs*, 6 Hill 438; *McClung* v. *Lackey*, 3 Pen. and W. 83; *Ticknor* v. *Wiswall*, 9 Ala. 305; *Rissam* v. *Edenmuston*, 1 Ired. Eq. 180; *Hofner* v. *Irwin*, 1 Ired. L. 490; *Fiedler* v. *Day*, 2 Sandf. 594; *Russell* v. *Winra*, 37 N. Y. 596; *Wakeman* v. *Grover*, 4 Paige 23; *Darling* v. *Rogers*, 22 Wend. 483.)

In this last case the court made a modification of the doctrine held in *Rogers* v. *De Forest*, 7 Paige 272, and in speaking of the rule, "void in part void *in toto*," the court said: "There is no such general principle as the maxim would seem to indicate. On the contrary the general rule is, that if the good be mixed with the bad, it shall nevertheless stand, provided a separation can be made. The exceptions are: first where a statute by its express terms, declares the whole deed or contract void on account of some provision which is unlawful; and second, where there is some all-pervading vice such as fraud for example, which is condemned by the common law, and avoids all parts of the transaction, because all are alike affected." Our statute of frauds provides: "Every assignment given with intent to hinder, delay or defraud creditors shall as to such creditors be void."

Code chap. 74, sec. 1. If the assignment is tainted with fraud, by our statute it is not void in part only, but it is void *in toto*. Fraud is an all-prevading vice, and whatever it touches, it taints throughout. Part can not be bad and the rest good. It is all bad. And it matters not how that fraud is made to appear. If the instrument is not on its face fraudulent, it may be shown, that it is in fact so ; that it was executed with a fraudulent intent. If that intent appears on the face of the deed, the injured creditor is saved the trouble of proving it. This deed is therefore void *in toto*.

But one question more remains to be considered in this record, and that is : Was the affidavit sufficient? If the attachment was sued out without a sufficient affidavit, then the court erred in refusing to quash it. The only objection made to the affidavit is, that the "material facts" stated, on which the affidavit was based, shows no sufficient ground for the attachment. A number of grounds are stated in the affidavit, but only two will be noticed: first, " that the defendants have assigned and disposed of their property with intent to defraud their creditors ;" and second, " that the said defendants fraudulently contracted the debt for the recovery of which the suit was brought." It is insisted, that according to the principles settled in *Delaplain* v. *Armstrong*, 21 W. Va. 211, the affidavit was wholly insufficient. It was held in that case, that the grounds for the attachment were conclusions of law. The "material facts," which the statute requires the affidavit to state, are the allegations, from which the court may be properly authorized to conclude, that the grounds exist. Consequently an affidavit, which only states, that the debtor did an act or acts, which of themselves are not necessarily fraudulent, with an intend to defraud his creditors, is not sufficient. The law is there clearly, concisely and correctly stated. To sustain the charge in the affidavit, that the assignment was made with intent to defraud the creditors of the grantors, the material facts stated are the making of the assignment and the powers which it contains, which, we have held, were conclusive evidence that it was made with fraudulent intent. That is certainly sufficient. The material facts relied on to sustain the charge, that "the debt was fraudulently con-

tracted," are "that defendants for some time before and up to the time of making the assignment were conducting a large flouring mill in the city of Huntington, and that in the course of said business they became much embarrassed and deeply in debt; that on the first day of December, 1884, a few days before the assignment was made, they made preparations for making an assignment to one T. W. Taylor, for the benefit of certain of their creditors, but from some cause postponed the making of the assignment for a time until December 9th, 1884, during which time the said firm was hopelessly insolvent, and such fact was well known to said defendants and to each of them, and was and had been known to them since November 1st, 1884; and being so insolvent and having full knowledge of the fact they concealed it from the affiant, and ordered the two car-loads of wheat to be shipped to them, while they were so insolvent, and the last car-load was ordered by them by telegraph on the 2d day of December, 1884, while they were contemplating the making of an assignment, and was received by them on the same day, they made said assignment, and placed in their mill; and before the same was taken out of the sacks, in which it was shipped, the said assignment was made to W. T. Thompson, assignee for the benefit of certain creditors of the firm, who had loaned them money."

Concealment of his insolvency by a purchaser, who obtains possession of goods without intending to pay for them, is a fraud and the property does not pass. [*Durell* v. *Haley*, 1 Paige Ch'y 492 (19 Am. Dec. 444); *Harris* v. *Alcock*, 10 Gill & J. 226 (32 Am. Dec. 158); *Bedault* v. *Wales*, 19 Mo. 36 (59 Am. Dec. 327); *Donaldson* v. *Farnell*, 93 U. S. 631.]

In *Mulleken* v. *Millar*, 12 R. I., it was held, that, where A through his agent purchased certain merchandise on credit and the day after its delivery made for the benefit of his creditors a general assignment to I; and A's liabilities were large and his assets were small, and the seller brought trover against I for the merchandise, it was not necessary for the plaintiff to show a particular intent on the part of A to defraud in the particular transaction in question; that it

was sufficient for the plaintiff to satisfy the jury of a general intent on the part of A to defraud, by continuing to purchase on credit, after he had become hopelessly insolvent. In *Talcott* v. *Henderson*, 31 Ohio St. 162, it was held, that a contract of purchase of goods on credit, made with intent on the part of the purchaser not to pay for them, is fraudulent; and if the purchaser has no reasonable expectation of being able to pay, it is equivalent to an intent not to pay. It seems to me under these authorities and in reason even under the strict rule laid down in *Delaplain* v. *Armstrong*, 21 W. Va., that, if these material facts stated are true, the debt due the plaintiff was fraudulently contracted. On this point my associates express no opinion, deeming it unnecessary in this case to decide that question. It is not necessary to notice the other frauds or the material facts stated to sustain them.

The court did not err in overruling the motion to quash the attachment. We see no error in the judgment of the Circuit Court, and it is therefore affirmed.

---

SNYDER, JUDGE, dissenting;

It seems to me, that the views expressed and conclusion announced in the foregoing opinion, are unsustained by 'either principle or authority. There can be no question that the provisions of a trust-deed may be of such a character as of themselves to furnish evidence sufficient to justify the inference of a fraudulent intent and thus render the deed void in law, without reference to extrinsic facts. Such is the case where the grantor reserves, either to himself or some one else for his benefit, a power over the property conveyed incompatible with the professed purposes of the trust and adequate to its defeat. Deeds of this class appear in many cases, among which are the following: *Lang* v. *Lee*, 3 Rand. 410; *Sheppards* v. *Turpin*, 3 Gratt. 357; *Quarles* v. *Kerr*, 14 Id. 48; *Kuhn* v. *Mack*, 4 W. Va. 186; *Claflin* v. *Foley*, 22 Id. 434; *Shattuck* v. *Knight*,, 25 Id. 590.

While this principle is fully established by these and other decisions, it is equally well settled, at least in this State and

Virginia, that no conclusive inference of an intent to defraud is deducible from a provision in a trust-deed postponing a sale of the property conveyed for a reasonable length of time and reserving the use of it to the grantor until the sale, even although a portion of the property may be perishable in its nature and consumable in the use. In order to show the extent to which such conveyances have been sustained I will review some of the Virginia and West Virginia cases most analogous to the one at bar.

In *Skipwith* v. *Cunningham*, 8 Leigh 271, decided in 1837, an insolvent debtor by trust-deed conveyed certain real estate, sundry slaves, all his stock of horses, mules, cattle, sheep, hogs, crops and household and kitchen furniture, together with all debts due him, except $350 which he reserved for his individual use and disposition, upon trust to two trustees, with a provision that the trustees, so soon as they or the survivor might deem expedient and proper, should sell the trust-property, either publicly or privately, in whole or in part, as they might judge best; the lands in three equal annual instalments, and all the other property on a credit of 12 months, *or such other terms as they or the survivor might deem most expedient*, and collect the proceeds, as well as the debts, and pay the creditors in the classes they are secured upon their executing a full release and discharge of all claims against the grantor. The court held that this deed was not fraudulent, although it postponed the sale at the discretion of the trustees, required the creditors to execute a release, the sale to be made on a long credit, and in the meantime the property was retained for the use and in the possession of the debtor.

In *Lewis* v. *Caperton*, 8 Gratt. 148, decided in 1851, there were a number of trust-deeds. One of them conveyed household furniture, the various kinds of stock on a farm, bacon and lard, and was not to be enforced for 18 months. The court held this deed valid against unsecured creditors, though it was made without the knowledge of the *cestui que trust* and the grantor was insolvent at the time. Another trust-deed, by the same grantor conveyed land to secure a loan of money and *not to be enforced for ten years*, was held to be valid against creditors. The land and personal prop-

erty in both these deeds were left in the use and absolute-
control of the debtor until the time fixed for the sale.

In *Cochran* v. *Paris*, 11 Gratt. 348, decided in 1854, it
was held, that "A deed of trust, which among other things
conveys growing crops of wheat, rye and oats, and which is
not to be enforced for two years from its date, is not neces-
sarily fraudulent as to creditors." The property was by the
terms of the deed to remain in the possession of the grantor
for said two years and thereafter until a sale upon the re-
quest of the creditors secured.

In *Dance* v. *Seaman*, 11 Gratt. 778, decided also in 1854,
the court held : "A deed of trust to secure *bona fide* credit-
ors, conveying land, slaves and crops, cut and growing, not
to be enforced for two years, reserving the profits in the
meantime to the grantor, and directing the surplus proceeds
of sale, after payment of the debts secured, to be paid to
the grantor, is not fraudulent *per se*, though made without
the knowledge of the creditors." This deed provided for a
sale, after two years, upon the request of any preferred cred-
itor, upon a credit of one and two years as to the land and
cash as to the personalty. Allen, President, for the whole
court, says : "If the questions presented by the record in
this case were of the first impression in this court, it would
be a matter for grave consideration, whether deeds of trust,
such as those assailed by the bill of the appellees, did not
contravene the spirit of the statute against fraudulent con-
veyances. * * * But these questions have been settled
by a series of adjudications of this Court. It would disturb
many titles if the principles heretofore established, and
sanctioned by the practice of the country, were now to be
questioned. If inconvenience results from the construction
heretofore given to the statute against fraudulent convey-
ances, the remedy should be administered by the law-mak-
ing power." (11 Gratt. 780 ; *Kevan* v. *Branch*, 1 Gratt.
274; *Janney* v. *Barnes*, 11 Leigh 100.)

In *Marks* v. *Hill*, 15 Gratt. 400, decided in 1859, the deed
was executed by Hill & Nichols, a mercantile firm, and
conveyed all their stock of goods, effects and credits, in trust,
that the trustee, with the consent of two of the preferred
creditors, should permit Nichols, one of the grantors, as

agent, to carry on the business, with authority to replenish the stock for the purpose of paying off the debts of the preferred creditors. It was also stipulated in the deed, that the agency of Nichols might be arrested whenever the two preferred creditors or the trustee, or any other three of the creditors, should in writing give direction to the trustee to make sale of the stock of goods by auction in such way as the trustee might judge best for the benefit of all interested. Upon mature consideration the court unanimously held and decided, that this deed was not fraudulent *per se.*

All and each of the foregoing cases were decided by the Supreme Court of Appeals of Virginia before the division of the State, and therefore they are authorities and precedents just as obligatory and binding upon us and the courts of this State as are the decisions of this Court.

Since the separation, these cases have been faithfully adhered to and carefully followed in the mother State, as binding precedents and settled law, in numerous cases—*Gordon* v. *Cannon,* 18 Gratt. 387; *Sipe* v. *Earman,* 26 Id. 563; *Brockenbrough* v. *Brockenbrough,* 31 Id. 580; *Williams* v. *Lord,* 75 Va. 390.

In none of the numerous cases, decided by our own Court, in relation to fraudulent conveyances, has any of these decisions been overruled or their authority and obligation been denied. In *Harden* v. *Wagner,* 22 W. Va. 356, the deed was made by the keeper of a livery stable and conveyed all his livery stock, consisting of horses, buggies, wagons &c., together with all his household and kitchen furniture, in trust, to secure two creditors. The grantor owed many other debts and was hopelessly insolvent. The deed provided, that "upon the demand of the secured creditors, or either of them, the trustee shall sell the trust property at public or private sale, and at retail or wholesale, and for cash or upon reasonable credit, *as may best promote the interest of the grantor and the secured creditors.*" This deed was held to be not only not fraudulent on its face, but that it was valid notwithstanding the insolvency of the grantor and the circumstances existing at the time of its execution.

In *Klee* v. *Reitzenberger,* 23 W. Va. 749, this Court de-

cided that: "A trust-deed, made by an insolvent debtor, conveying his household and kitchen goods and furniture to secure a *bona fide* debt due from him to his mother, and payable at six months, with a provision in the deed that the grantor shall retain the possession, use and enjoyment of the property until there is default in the payment of the debt at its maturity, *and the trustee shall be required by the creditor to sell the same,* was under the circumstances a valid conveyance."

This Court again in *Kyle* v. *Harveys,* 25 W. Va. 716, decided as follows: "A merchant, being insolvent, assigns his whole stock of goods for the benefit of his creditors, two of them being preferred, and by the assignment authorized the assignee to sell said goods *at private sale* as soon as possible, and *after paying the expenses of sale* to distribute the proceeds of sale as directed by the assignment among the creditors of the assignor, HELD—This assignment was not fraudulent on its face." In this case most of the Virginia cases above mentioned are cited and relied on as law in this State. And Green, J., delivering the opinion of Court, says: "In Virginia and this State the courts have gone farther (in holding deeds valid, which provide for a private sale), and held, that a provision in a deed of trust to secure creditors, that the trustee may continue the business and *replenish the stock,* if intended merely as a means of realizing the trust fund and with a view of winding up the business, is not fraudulent *per se* so as to avoid the deed"—citing *Marks* v. *Hill,* 15 Gratt. 400, and other cases—25 W. Va. 729.

If it is possible to settle any legal principle conclusively and beyond question by precedent, or if there is any such a thing in this State as the doctrine of *stare diasis,* then, it seems to me, incontrovertible that the repeated decisions hereinbefore mentioned, running through, at least, a half century, without a single break, have conclusively and unequivocally settled for Virginia and this State the following legal propositions: "First, That a provision in a trust-deed, made by an insolvent debtor, to secure a *bona fide* debt, postponing for a reasonable time a sale of the trust property, is not fraudulent *per se,* even though a portion of the property may be perishable in its nature and consumable in the use.

Second, Nor is such deed fraudulent on its face, because it provides, that the trustee may with the consent of one or more of the preferred creditors, carry on the business and replenish the stock when it can be inferred from the whole deed that such provision was intended merely as a means of winding up the business and realizing the trust fund. Third, Nor is such deed fraudulent *per se*, because it contains a provision that the trustee shall not sell until after default of payment and then only upon the demand of one or more of the preferred creditors, and that the trustee may sell the trust property at public or private sale, at retail or wholesale, and for cash or upon reasonable credit as may to him seem best for the interests of the secured creditors.

In *Clarke* v. *Figgins*, 27 W. Va. 663, this Court held, that, "Where a decision has been rendered in the State of Virginia and followed in two other cases in Virginia before the separation, the decisions will be followed by this Court without enquiring into the grounds on which said decisions are based." In that case some of the decisions before recited were questioned in the argument; but this Court, without enquiring into the policy or reasons on which they were founded, sustained the principles decided by them. In delivering the opinion of the Court, Johnson, President, says: "The common law was only builded into a magnificent structure by our fathers laying a broad foundation, and the judges followed them, being careful that every successive stone placed upon the foundation should not be different from those already laid. Thus we see harmony in the building throughout. If a different course had been pursued, and hasty and ill-advised decisions made without regard to precedents, the common law instead of showing symmetry in its perfection would be one incongruous mass, and no one could form any idea how a matter would be decided, as in each case the judge would decide according to his own peculiar notion of what in that particular case might be right; and we know that it is often true, that what one would consider right in a particular case, another would regard as wrong. Nothing keeps a judge so strictly in the line of his duty, as the feeling and constant realization of the fact that he is bound by precedents. * * * It is only safe to know how the ques-

tion has been settled, if settled at all, and then not depart from the rule; and if it has not been settled, to settle it after thorough examination of the principles upon which it must rest. We can not now disturb the Virginia decisions. According to those decisions the deed of trust in this cause is not fraudulent on its face." (27 W. Va. 672.)

It thus appearing that the law on the question before us has been fully and finally settled by our own adjudications and those of Virginia, which are binding upon this Court, it is wholly unnecessary and irrelevant to consider or refer to the law or decisions of the courts of other States. I may, however, state in this connection, that if the question before us was one of first impression, I should hesitate long before I would go to the extent of some of the Virginia decisions in sustaining the validity of trust-deeds made by insolvent debtors. Some of these decisions it seems to me, hold valid provisions in such deeds which strongly contravene the spirit if not the very letter of the statute against fraudulent conveyances; and, therefore, I am unwilling to extend the doctrine of those decisions one iota beyond what has been clearly settled by them; but to the extent the decisions have gone, duty as well as sound policy and safety, requires, that they should be sustained as establishing a rule of property and adhered to in good faith. If any alteration or departure is deemed necessary it should be made by the Legislature and not by the courts.

It must not be forgotten that the sole question here presented is, whether the provisions of the trust-deed in this case are such as to render the deed fraudulent upon its face as a simple question of law; and not whether its provisions, taken in connection with extrinsic facts to be shown by evidence other than what appears on the face of the deed itself, were intended for an illegal purpose, and therefore fraudulent in fact. These are two very different questions. In the former case, if the provisions of the deed can be reconciled with an honest purpose, it must be sustained. The presumption of law is in favor of honesty, and the Court cannot presume fraud unless the terms of the deed preclude any other inference.

But if the question before us were *res integra*, and we

were untrammelled by precedents or authority, the doctrine and conclusion of the preceding opinion ought not to be adopted. Upon principle as well as authority, regardless of the decisions of Virginia and this State, the deed in this case ought not to be held invalid and fraudulent *per se.* It is not claimed or pretended, that the deed here is fraudulent or otherwise objectional in any respect, except the following provision : " And should the said trustee, W. T. Thompson, deem it to the best interests of the said creditors, he is hereby authorized either to rent out or run the mill property in the city of Huntington, Cabell county, W. Va., hereby conveyed, known as the Biggs Mills, for the period of one or more years, or for a greater or less period of time, as shall seem to him advisable after having consulted with the said creditors and obtained their consent, or a majority thereof in interest herein. "

The property and choses in action conveyed by this deed are shown by it to be over $45,000.00 in value, while the debts secured aggregate less than $24,000.00, leaving an excess of over $21,000.00 for the payment of unsecured creditors. The Biggs Mills, the only property embraced in the above recited provision, is valued in the conveyance at but $20,000.00, leaving $25,000.00 in value of the property conveyed to be at once and unconditionally applied by the trustee to the payment of the debts secured, and more than sufficient to pay the whole of said debts. This is what the conveyance shows upon its face ; and however fictitious the values, thus appearing, may be proven to be by extrinsic evidence, they must be taken as absolutely correct in determining the question now presented, that is, whether or not said conveyance is fraudulent upon its face.

It will be observed that the provision of the deed above quoted does not restrain the action of the trustee by any prohibition or limitation upon his discretion. The qualifications of his discretion are simply permissive and none of them are absolute or prohibitory. The trustee is to use his judgment and exercise it for " the best interest of the creditors of the said Wilson & Beardsley, " and in doing so, he may, with the consent of all or a majority in interest of said creditors, rent or run said mill property for one or more

years, or for a greater or less time. There is nothing here to prevent him from selling this property at once, if he thinks the interests of the creditors will be promoted thereby. The consent of the creditors need not be obtained and is not required to enable the trustee to make an immediate sale. Such consent is required only as authority to the trustee to rent or run the mill property. It is a limitation upon his discretion to rent or run the property and not a restraint or prohibition upon his authority to make an immediate sale.

It has certainly never been held in any well considered decision, that an express grant to a trustee of authority to use his discretion in the control and disposition of the trust property so as best to promote the objects of the trust, would render the conveyance fraudulent *per se*, especially when no prohibitory limitation is imposed and there is nothing in the deed postponing default or preventing an immediate sale. The vice in the deeds declared fraudulent in *Quarles* v. *Kerr*, 14 Gratt. 48, and *Livesay* v. *Beard*, 22 W. Va. 585, and other cases of that class, was that by the stipulations of the deeds the sales were postponed and positively inhibited for an uncertain time, which might, by the terms and conditions of the deeds, with the connivance or consent of a portion of the secured creditors, be made indefinite. The deed before us is very different from these. Here no inhibition is interposed and no consent to a sale is required. By the terms of the deed no creditor can control the discretion of the trustee so as to prevent an immediate sale. Whether or not such sale shall be made at once is, so far as the grantors and the *cestuis que trusts* are concerned, a matter entirely within the discretion of the trustee. While this discretion of the trustee is thus absolute the deed expressly declares that it shall be so exercised as to promote the best interests of the creditors of the grantors. If, therefore, the trustee should use his discretion in such manner as in the judgment of a court of equity would be regarded as a breach of his trust, such court would, upon the application of any party interested, whether such party be the grantor, or one or more of the secured creditors, or an unsecured creditor of the grantor, interpose its authority and compel the trustee to execute the trust in good faith according to the expressed purposes and

spirit of the deed. *Harden* v. *Wagner*, 22 W. Va. 356, 371–2; *Shattuck* v. *Knight*, 25 Id. 590, 597; *Kyle* v. *Harveys*, Id. 716, 729; *Lewis* v. *Caperton*, 8 Gratt. 148; *Quarles* v. *Kerr*, 14 Id. 48, 55; *Sipe* v. *Earman*, 26 Id. 563, 569; *Rossett* v. *Fisher*, 11 Id. 499.

If this deed is condemned as fraudulent *per se*, then I humbly and with deference submit, that no valid trust-deed can safely and with any certainty that it will not be set aside by the courts, be made to secure a *bona fide* debt by any debtor, however solvent he may be, or however small may be the debt secured in proportion to his property, if in such deed he confers upon the trustee any discretion as to the time and terms upon which a sale of the trust property shall or may be made. According to the facts appearing upon the face of this conveyance, here is a debtor owning and pos-sessed of property and credits of the value of $45,000.00, a part of which consists of a mill property worth $20,000.00, all of which he conveys to a trustee to secure less than $24,-000.00 of debts, without any conditions or suggestions to the trustee as to the disposition of $25,000.00 worth of said prop-erty and credits, leaving the statute alone to control him en-tirely as to the disposition of that portion of the trust prop-erty, and nothing appearing upon the face of the conveyance or elsewhere of which we can take cognizance to show, that he owed a single farthing other than the debts secured in this deed; with this deed before us, showing these facts, will this Court, at the instance of an unsecured creditor of the grantor having a simple contract debt of less in amount than $800.00, declare and solemnly hold said conveyance fraudulent *per se*, merely because and upon the sole ground, that it grants permission to the trustee to rent or operate the mill property for one or more years, or for a greater or less time if he shall deem it advisable to do so after having con-sulted and obtained the consent of all or a majority in inter-est of the creditors of the grantor? With due deference to the opinion of this Court, I must say, that if it were not a fact, it would seem to me incredible.

For the foregoing reasons I dissent from the opinion of the majority of the Court, and am of the opinion, that the Circuit Court erred in refusing to allow the defendant, Thompson, to

read the trust-deed aforesaid in evidence to the jury, and that for this reason the judgment of said court should be reversed.

And being thus of opinion, that the said trust-deed is not fraudulent *per se*, I am also of opinion, that the court should have quashed the plaintiff's attachment because the affidavit on which the same is founded is insufficient.

AFFIRMED.